Charles E. SUTTON and Jack L. Lowe, Complainants–Appellees and Cross–Appellants,

v.

UNIVERSITY OF SOUTHERN COLORADO, Respondent–Appellant and Cross–Appellee,

and

State Personnel Board, Appellee.

No. 92CA1932.

Colorado Court of Appeals, Div. III.

Feb. 24, 1994.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Joe T. Ulibarri, Pueblo, for complainants-appellees and cross-appellants.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Michael W. Schreiner, Asst. Atty. Gen., Lee R. Combs, Sp. Asst. Atty. Gen., State Bd. of Agriculture, Denver, for respondent-appellant and cross-appellee.

No appearance for State Personnel Bd.

Opinion by Judge CRISWELL.

Both the respondent, University of Southern Colorado, and the complainants, Charles Sutton and Jack Lowe, appeal from the order of the State Personnel Board that was entered after our former remand of the cause to it. *See Tising v. State Personnel Board,* 825 P.2d 1011 (Colo.App.1991). We again reverse and remand for further consideration.

The operative facts giving rise to the complainants' grievances are substantially undisputed. Those grievances arose from the University's reorganization of its campus police force in 1985. Prior to that reorganization, the police force consisted of several administrators, two public safety sergeants (of whom complainant Lowe was one), and six public safety officers, including complainant Sutton, all of whom were classified state employees. The sergeants and all of the public safety officers were armed.

The decision to reorganize this force was prompted by several considerations. The force was considered to be "top heavy" with administrators, the University was undergoing a declining enrollment and a decrease in campus activities, and in addition, reservations were expressed as to the appropriateness of maintaining an armed police force on any university campus.

As a result of these considerations, the University's president decided to reorganize the force by reducing the number of administrators, by eliminating one sergeant's position, and by replacing three of the six armed public safety officers with unarmed guards. In addition, the president decided to continue to have the remaining sergeant supervise the three armed public safety officers, but to contract with a private security firm to provide the three unarmed guards. This latter decision was reached only after the president obtained a written legal opinion from the Attorney General that such contracting out of the guards' positions was legally permissible.

This reorganization was effective as of August 31, 1985, and as a result of the elimination of one of the sergeant's positions, Lowe, who had less seniority in that position, was placed on layoff status on that date. In addition, because three of the former safety officer positions were contracted out to a private concern, Sutton, who also had less seniority, was also placed on layoff status.

In May 1987, as a result of a vacancy occurring in the public safety officer position, complainant Sutton was offered and accepted employment in that position. Later that year, complainant Lowe, who had become employed as a patrol deputy with the Sheriff of Pueblo County, was also offered reinstatement as a public safety officer. He refused such offer, however.

Both complainants, as well as at least one of the administrators who also was laid off as a result of the reorganization, filed grievances with the State Personnel Board, asserting that the contracting out of the work of the unarmed guards violated their rights as classified employees. Initially, the Board

denied their grievances, and they appealed to this court.

While that appeal was pending, our supreme court rendered its opinion in *Colorado Ass'n of Public Employees v. Department of Highways,* 809 P.2d 988 (Colo.1991). There, the court concluded that the Civil Service Amendment, Colo. Const. art. XII, § 13, prevented the contracting out to private concerns of functions performed by classified employees, at least in the absence of the adoption of criteria for such contracting out.

That opinion was deemed to be dispositive of the two complainants' assertion before this court that the University's contract with the private security firm was improper. Hence, it was concluded that, to the extent that these two complainants had been harmed by such contracting out, they were entitled to relief. The cause was remanded to the Board, therefore, to consider an appropriate remedy to be granted to them. *Tising v. State Personnel Board, supra.*

Significantly, however, in *Tising* the court concluded that the public safety administrator had suffered no injury as a result of the contracting out, even though the reorganization itself caused his loss of employment. This was so "because his position as public safety administrator was to be eliminated as part of the *reorganization* and *regardless of whether a private security firm was engaged.*" *Tising v. State Personnel Board, supra,* 825 P.2d at 1013 (emphasis supplied).

Upon remand, the Board's Administrative Law Judge (ALJ) concluded that the contract with the private security firm was "void from the beginning." Hence, she concluded that complainant Lowe was entitled to backpay and benefits as a public safety sergeant from the date that he was laid off until he is reinstated by the University as a public safety officer; that Lowe's previous refusal of the 1987 offer of employment as a public safety officer did not bar his receipt of such benefits; and that complainant Sutton was also required to be "reinstated" as a public safety officer with full back pay and benefits. The ALJ rejected the University's assertion that, even had there been no contracting out,

the reorganization of the police force would have resulted in the two complainants being demoted. She determined that, to attempt to base the backpay of complainants upon the pay rate of an unarmed guard would be "speculative and contrary to the holding that such private contracts were void from the beginning."

Finally, the ALJ determined that complainants were not entitled to be awarded attorney fees under § 24–50–125.5, C.R.S. (1988 Repl.Vol. 10B) because the University's decision to contract out the guards' functions was made in good faith and in reliance upon legal advice.

The Board adopted the ALJ's findings and conclusions, and the parties instituted the present appeals.

## I.

■ The University argues, first, that the ALJ and the Board erred in ordering that complainants Lowe and Sutton receive backpay based upon a sergeant's and a public safety officer's rate of pay, respectively. It argues that, had there been no contracting out of the guards' positions, complainants would, nevertheless, have been demoted to the position of unarmed guards as a result of the general reorganization of the police force. We agree that the ALJ applied the wrong principle in determining the method of computing the backpay due.

■ If a state employee is improperly terminated, that employee is entitled to be reimbursed for any wage loss resulting from that improper termination. He or she is not entitled to any "windfall," however. *Department of Health v. Donahue,* 690 P.2d 243 (Colo.1984).

Here, the University's decision to reorganize had adverse effects upon some of the police personnel, which would have occurred irrespective of whether the University contracted out any of the police functions. This was specifically recognized in the opinion resulting from the former appeal in this case. *See Tising v. State Personnel Board, supra.*

Thus, the decision to eliminate one of the two sergeant positions and the decision to

reduce the number of public safety officers from six to three and to replace those three eliminated positions with unarmed guards had an adverse effect upon complainants' working conditions. And, such effect would have been sustained whether or not the decision to contract out the guards' functions had been made.

Complainant Lowe ceased being a *sergeant*, not because the University improperly contracted out the guards' functions, but because of the overall reorganization that resulted in the elimination of his position.

Likewise, complainant Sutton did not cease being a *public safety officer* because the University decided to contract out some of its police work. Sutton ceased being a public safety officer because the number of such positions was reduced from six to three, and Sutton was not among the three senior public safety officers who remained.

This is not to say that complainants were not injured by the University's decision to contract out the work of its three unarmed guards. On the contrary, it concedes that, had such contracting out not been engaged in, and had the three positions of unarmed guards remained a part of the classified service, both Lowe and Sutton would have been offered continued employment in those positions.

If we assume the factual accuracy of this assertion, then, the injury suffered by the two complainants is not to be measured by the pay and benefits that they would have received as a sergeant or as public safety officer. The contracting out did not deprive them of such benefits; such improper activity deprived them only of the pay and benefits that they would have received had they been continued in the University's employ as unarmed guards.

Because the backpay award here is based upon the erroneous assumption that, had there been no contracting out, complainants would have continued to be employed as a sergeant and as a public safety officer, respectively, that backpay order cannot stand.

■ Likewise, and for the same reason, we find no justification for the order requiring complainant Lowe to be reinstated to the position of public safety officer. The ALJ ordered such reinstatement based upon the conclusion that Lowe was entitled to be reinstated as a sergeant but that, since such position had been abolished, the most similar existing position was public safety officer. However, because Lowe was not entitled to be reinstated in the position of sergeant, there is no basis for requiring his reinstatement as a public safety officer, unless Lowe's evidence demonstrates that, had there been no contracting out, he reasonably could have expected to be advanced to such position at some time before the hearing.

■ Complainant Sutton was also ordered to be reinstated as a public safety officer. However, Sutton has been employed in that position since 1987. Consequently, the University should not be directed to reinstate Sutton as a guard. Sutton, however, should be given the opportunity to continue in his present employment with the length of service and other benefits presently recognized or to transfer to the guard position, in which event he would be entitled to receive all the benefits, including any promotions, which he would have received had he continuously served in that position from the effective date of the reorganization.

## II.

■ The University also argues that it was error for the ALJ not to have found that its liability for backpay to complainant Lowe terminated in 1987, when it offered to employ him as a public safety officer and he refused to accept such employment. We cannot reach that conclusion, as a matter of law. However, we do agree that the ALJ employed a faulty analysis in considering this issue, and therefore, a remand for reconsideration is necessary.

■ When faced with an employee's claim of an improper discharge, an employer may terminate its liability for continuing backpay by offering, unconditionally, to reinstate such employee to the same or substantially equivalent position from which he or she was discharged. Such offer need not be accompanied by an offer to pay past damages and may be made without prejudice to any of the

parties' claims or defenses. *See Aguinaga v. United Food & Commercial Workers International Union,* 993 F.2d 1463 (10th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 880, —— L.Ed.2d —— (1994); *Polynesian Cultural Center, Inc. v. N.L.R.B.,* 582 F.2d 467 (9th Cir.1978) (discharges allegedly violating the National Labor Relations Act); *Claiborne v. Illinois Central R.R.,* 583 F.2d 143 (5th Cir.1978), *cert. denied,* 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979) (claim arising under Title VII of Civil Rights Act of 1964).

Here, the offer made to Lowe to employ him as a public safety officer was unconditional. His written rejection of that offer, however, was based upon the fact that it was not an offer to reinstate him as a sergeant and did not offer any backpay. At the hearing, he testified, also, that such position provided lesser job security than did the position with the Pueblo County Sheriff in which he was then employed.

Based upon these considerations, the ALJ determined that Lowe did not improperly fail to "mitigate" his damages. In reaching this conclusion, the ALJ compared the job of public safety officer which was offered to him with the position of sergeant which he had previously occupied and with his present position with the Sheriff. These were, however, inapt comparisons.

Lowe was not improperly terminated from his position of sergeant; had there been no contracting out, he would have been employed only as an unarmed guard. Hence, to determine whether the University's unconditional offer to re-employ him as a public safety officer constituted the offer of "substantially equivalent" employment, a comparison must be made between the unarmed guard position he would have occupied and the public safety officer position which was offered.

■ To be substantially equivalent to the job lost, the job offered must utilize similar skills, must call for similar pay, must have similar working conditions, and must provide similar benefits. *Polynesian Cultural Center, Inc. v. N.L.R.B., supra.*

We cannot say, as a matter of law, that the position offered here was substantially equivalent to the unarmed guard position. Such determination is for the factfinder. However, because the ALJ employed the improper comparison, a remand for reconsideration of this issue is also necessary.

### III.

■ On cross-appeal, complainants argue that it was error to refuse to award to them their attorney fees incurred in the prosecution of their grievances. We disagree.

Section 24–50–125.5, C.R.S. (1988 Repl.Vol. 10B) provides that, if any personnel action is instituted "frivolously, in bad faith, maliciously, or as a means of harassment or was otherwise groundless," the employee appealing from such action is entitled to receive reimbursement for any attorney fees and costs incurred in such appeal.

Here, however, the undisputed evidence was that, before contracting with the private security firm, the University's president asked for and received an opinion from the Attorney General that such action would not be improper. Hence, the ALJ's determination that such action did not fall within the terms of the fee statute is fully supported by the record. It cannot, therefore, be overturned on appeal to the courts. *See Board of Assessment Appeals v. Colorado Arlberg Club,* 762 P.2d 146 (Colo.1988).

The order of the Board is reversed, and the cause is remanded to the Board for its reconsideration in accordance with the views expressed in this opinion.

DAVIDSON and TAUBMAN, JJ., concur.