271 S.W.3d 659 (2008)
Leonard Michael MILLER
v.
CIVIL SERVICE COMMISSION OF THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY.
No. M2006-00917-COA-R3-CV
Court of Appeals of Tennessee, at Nashville.
January 10, 2007 Session.
January 22, 2008.
Permission to Appeal Denied by Supreme Court June 23, 2008.
*661 David L. Raybin, Nashville, Tennessee, for the appellant, Leonard Michael Miller.
James L. Charles, Department of Law of the Metropolitan Government of Nashville and Davidson County, for the appellee, Civil Service Commission of the Metropolitan Government of Nashville and Davidson County.

OPINION
WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J., joined. WILLIAM B. CAIN, J., not participating.
This appeal involves the reorganization of the upper echelons of the Metropolitan Nashville Police Department by the new Chief of Police. The reorganization plan, which had been reviewed and approved by the Director of Human Resources and the Civil Service Commission, abolished the Assistant Chief of Police positions and rolled back the incumbents to the rank of Captain. One of the former Assistant Chiefs of Police filed suit in the Chancery Court for Davidson County, asserting that the abolishment of the Assistant Chief of Police position did not comply with the Civil Service Commission's rules. Specifically, he argued (1) that the Assistant Chief of Police position had not been abolished but rather had been renamed and (2) that the increased use of temporary assignment ranks was not appropriate because it increased the Chief of Police's control over the highest ranking officers. The trial court determined that the reorganization plan was consistent with the Civil Service Commission's rules, and the former Assistant Chief of Police appealed. Like the trial court, we have determined that the reorganization plan is consistent with the applicable rules of the Civil Service Commission.

I.
In January 2004, Ronal W. Serpas became the new Chief of Police of the Metropolitan Nashville Police Department. Because he is responsible for the efficient operation of the police department, Chief Serpas immediately undertook an examination of the command structure and, based on his extensive law enforcement experience,[1] determined that it was top *662 heavy  that there were "too many generals." Accordingly, Chief Serpas decided to alter the lines of accountability and responsibility between the chief of police, his first level of assistants, and the actual divisional operations of the police department.
In April 2004, after receiving guidance and counsel from the city's Director of Human Resources, Chief Serpas submitted a formal request to reorganize the command structure of the Metropolitan Nashville Police Department. The plan was designed to "remove the layer of supervision between the first reports to the chief executive and the divisional commanders." Accordingly, the plan called for:
(1) reducing the number of bureaus in the department from five to three;
(2) placing each bureau under the command of a Deputy Chief of Police, rather than an Assistant Chief of Police, who would report directly to the Chief of Police;
(3) abolishing the Assistant Chief of Police position and rolling back the incumbents to the rank of Captain and then reassigning them;
(4) abolishing the Major position;[2] and
(5) utilizing the temporary assignment positions of Deputy Chief of Police and Commander.
The Director of Human Resources approved Chief Serpas's reorganization plan. After his reorganization plan was approved, Chief Serpas formally notified the incumbent Assistant Chiefs of Police that the Assistant Chief of Police position was going to be abolished and that they would be rolled back to the rank of Captain and reassigned.
As a result of the reorganization, three Assistant Chiefs of Police retired, and two others accepted temporary assignment ranks as Deputy Chief of Police. Leonard Michael ("Mickey") Miller, who had been the Assistant Chief of Police for the West Patrol Division since 2003 and who was not yet eligible to retire, was rolled back to the rank of Captain. However, Chief Serpas also gave him the temporary assignment rank of Commander with a slight increase in annual salary. He continued to supervise the West Patrol Division.
Commander Miller promptly appealed to the Civil Service Commission. He asserted that he could not be rolled back to the rank of Captain because the Assistant Chief of Police position had not been effectively "abolished." Commander Miller based this argument on his belief that the duties of the Deputy Chief of Police position were the same as the duties of his former Assistant Chief of Police position. He also insisted that the increased use of temporary assignment positions that did not afford the incumbents full civil service protection would subject the incumbents to too much control by the Chief of Police.
The Civil Service Commission conducted a hearing and, on August 10, 2004, issued findings of fact and conclusion of law, including:
(1) that the Chief of Police is responsible for the efficient operation of the Metropolitan Police Department;
(2) that the civil service rules permit the Chief of Police to roll back employees when doing so is necessary because of the abolishment of positions;

*663 (3) that the Director of Human Resources had approved Chief Serpas's proposed reorganization and had determined that it made sense from an organizational perspective;
(4) that the current positions of Deputy Police Chief and Commander have different responsibilities than the previous positions of Assistant Police Chief and Major;
(5) that assigning Captains as Commanders of the six sectors/precincts did not add an additional level of supervision; and
(6) that the Chief of Police's reorganization plan, including the abolishment of the Major and Assistant Chief of Police positions, complied with Civil Service Commission Rule 3.11.
Accordingly, the Commission upheld Chief Serpas's reorganization plan, as well as his decision to roll back Commander Miller to the rank of Captain and to give him the temporary assignment rank of Commander.
Commander Miller filed a petition in the Chancery Court for Davidson County seeking judicial review of the Commission's decision. On April 11, 2006, the trial court filed a memorandum opinion, stating in part:
As found by the Civil Service Commission, the abolishment of the ranks of Police Major and Assistant Police Chief was done within the limits of the Chief's authority and in accordance with the Rules and Policies of the Civil Service Commission, particularly Rule 3.11. As a result of the reorganization, the administration was changed from two Deputy Chief and five Assistant Chief positions to three Deputy Chief positions. Duties previously performed by the Assistant Chiefs were transferred to the Deputy Chiefs, along with additional duties which had been previously performed by the Chief of Police. The Commission found that the new positions of Deputy Chief and Commander had different responsibilities than the previous Assistant Chief and Police Major positions. These findings are supported by the record, and this Court concurs that there was not a substitution of positions but, rather, a true reorganization of high level positions within the Police Department, including the reallocation of administrative and supervisory responsibilities.
* * *
The decision to reorganize the Department, the reallocation of responsibilities among the various positions, and the abolishment of the Assistant Chief and Police Major were all made and done in accordance with the applicable provisions of the Metropolitan Charter and Civil Service rules. [Commander Miller] was afforded the procedural and substantive rights due him under the Civil Service regulations. Much of [Commander Miller's] argument takes issue with the manner in which the reallocation of job assignments was made and the perceived effort of the Chief to consolidate power and control of the Department by staffing the Department's upper management positions using assignment classifications rather than permanent positions. Whether this is wise or appropriate is a policy decision vested in the Chief of Police and the Department of Personnel.
Accordingly, the trial court affirmed the Commission's rollback of Commander Miller to the position of Captain and dismissed his case.
Commander Miller has appealed to this court. He does not argue that the proper procedures were not followed, that the Chief of Police may not reorganize the *664 Metropolitan Police Department, or that the use of temporary assignment positions is impermissible. Rather, his appeal rests on two distinct grounds. First, Commander Miller asserts that there has been no abolishment of the Assistant Chief of Police position for the purpose of Civil Service Commission Rule 3.11 because the Deputy Chief of Police position is the functional equivalent of the Assistant Chief of Police position. He insists that Chief Serpas's reorganization merely substituted one position for the other with the duties of the Assistant Chiefs of Police now being performed by the Deputy Chiefs of Police. Second, Commander Miller asserts that Chief Serpas's emphasis on the temporary assignment positions of Deputy Chief of Police and Commander, which do not offer the same level of civil service protection, impermissibly increases his control over the upper level command structure of the Metropolitan Police Department.

II.
The courts review the decisions of local civil service boards that affect the status of employees of local governments using Tenn.Code Ann. § 4-5-322(h) (2005)'s standard of review. Tenn.Code Ann. § 27-9-114(b)(1) (2000); City of Memphis v. Civil Serv. Comm'n, 216 S.W.3d 311, 315-16 (Tenn.2007); Tidwell v. City of Memphis, 193 S.W.3d 555, 560 (Tenn.2006). Therefore, both the trial and appellate courts[3] will modify a local civil service commission's decision affecting the status of an employee of local government only if the commission's action (1) violated constitutional or statutory provisions,[4] (2) was in excess of its authority,[5] (3) utilized unlawful procedure,[6] (4) was arbitrary, capricious, or characterized by an abuse or clearly unwarranted use of discretion,[7] or (5) is unsupported by substantial and material evidence.[8]
In cases where a commission's jurisdiction, authority, and procedures are not at issue, Tenn.Code Ann. § 4-5-322(h)(4), (5) require the courts to review the commission's decision using a three-step analysis. First, the court must determine whether the commission has identified the appropriate legal principles applicable to the case. Second, the court must carefully examine the commission's factual findings to determine whether they are supported by substantial and material evidence. Third, the court must examine how the commission applied the law to the facts. Armstrong v. Metro. Nashville Hosp. Auth., No. M2004-01361-COA-R3-CV, 2006 WL 1547863, at *2 (Tenn.Ct.App. June 6, 2006) (No Tenn. R.App. P. 11 application filed); McEwen v. Tenn. Dep't of Safety, 173 S.W.3d 815, 820 (Tenn.Ct. App.2005).
While Tenn.Code Ann. § 4-5-322(h) does not explicitly define what "substantial and material evidence" is, the courts have interpreted it as requiring something less than a preponderance of the evidence but more than a scintilla or glimmer. Dickson v. City of Memphis Civil Serv. Comm'n, 194 S.W.3d 457, 464 (Tenn.Ct.App.2005); Gluck v. Civil Serv. Comm'n, 15 S.W.3d at *665 490; Wayne County v. Tenn. Solid Waste Disposal Control Bd., 756 S.W.2d 274, 280 (Tenn.Ct.App.1988). Substantial and material evidence is the amount of relevant evidence that a reasonable person would require to reach a rational conclusion. Thus, substantial and material evidence furnishes a reasonably sound basis for the commission's decision. Clay County Manor, Inc. v. Dep't of Health & Env't, 849 S.W.2d 755, 759 (Tenn.1993); Southern Ry. Co. v. State Bd. of Equalization, 682 S.W.2d 196, 199 (Tenn.1984); Bobbitt v. Shell, 115 S.W.3d 506, 510 (Tenn.Ct.App. 2003).
Because the application of the law to the facts is a highly judgmental process involving mixed questions of law and fact, the court's review of a commission's decision is limited[9] and deferential to the commission. Armstrong v. Metro. Nashville Hosp. Auth., 2006 WL 1547863, at *2. The courts may neither reweigh the evidence nor substitute their judgment for the commission's, even if the evidence could support a conclusion different from the one reached by the commission. Tenn. Code Ann. § 4-5-322(h)(5)(B); City of Memphis v. Civil Serv. Comm'n, 216 S.W.3d at 316; McClellan v. Bd. of Regents, 921 S.W.2d 684, 693 (Tenn.1996); Eatherly Constr. Co. v. Tenn. Dep't of Labor & Workforce Dev., 232 S.W.3d 731, 735 (Tenn.Ct.App.2006). Rather, the courts must determine whether a reasonable person could appropriately have reached the same conclusion reached by the commission, consistent with a proper application of the controlling legal principles. McEwen v. Tenn. Dep't of Safety, 173 S.W.3d at 820.
Commission decisions that are not supported by substantial and material evidence are necessarily arbitrary and capricious, as are decisions with adequate evidentiary support that are based on a clear error in judgment. City of Memphis v. Civil Serv. Comm'n, 216 S.W.3d at 316. In its broadest sense, the arbitrary and capricious standard in Tenn.Code Ann. § 4-5-322(h)(4)
requires the court to determine whether the administrative agency has made a clear error in judgment. An arbitrary or capricious decision is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.
City of Memphis v. Civil Serv. Comm'n, 216 S.W.3d at 316 (quoting Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n, 876 S.W.2d 106, 110-11 (Tenn.Ct.App.1993) (internal citations omitted)).
When judicial review of a commission's decision entails the construction of a rule or regulation, the courts must also give great weight to the commission's interpretation of its own rules, Exxon Corp. v. Metro. Gov't, 72 S.W.3d 638, 641 (Tenn.2002); Jackson Express, Inc. v. Tenn. Pub. Serv. Comm'n, 679 S.W.2d 942, 945 (Tenn.1984), especially if the interpretation has been followed for many years without challenge. SunTrust Bank v. Johnson, 46 S.W.3d 216, 226 (Tenn.Ct.App. 2000). However, the courts should decline to adopt a commission's interpretation of a rule if that interpretation (1) is plainly erroneous, (2) is inconsistent with the plain language of the rule, or (3) has no reasonable basis in law. Jackson Express, Inc. v. Tenn. Pub. Serv. Comm'n, 679 S.W.2d 942, 945 (Tenn.1984); Cawthron v. Scott, 217 Tenn. 668, 674, 400 S.W.2d 240, 242 (1966); Waste Mgmt, Inc. of Tenn. v. Solid Waste *666 Region Bd., No. M2005-01197-COA-R3-CV, 2007 WL 1094131, at *3 (Tenn.Ct.App. Apr.11, 2007) (No Tenn. R.App. P. 11 application filed).

III.
Commander Miller's principal argument is that the rollback in his classification from Assistant Chief of Police to Captain was not consistent with the Civil Service Commission's rules. He insists that Civil Service Commission Rule 3.11 permits rollbacks such as this only when there is a shortage of work or funds or when an incumbent's position has been abolished. He also asserts that the Assistant Chief of Police position was not abolished but rather that the same duties are now being performed by the Deputy Chiefs of Police. The Commission determined that the duties formerly performed by the Assistant Chiefs of Police are not the same as the duties currently performed by the Deputy Chiefs of Police. The record contains substantial and material evidence supporting this conclusion.
We begin with the recognition that the Chief of Police is responsible for the efficient operation of the Metropolitan Police Department.[10] We also recognize that police departments are "para-military" organizations, Watts v. Civil Serv. Bd., 606 S.W.2d at 281, and that a highly structured chain of command is essential to their proper functioning. Stewart v. City of Wichita, 827 F.Supp. 1537, 1540 (D.Kan.1993). Accordingly, like other governmental agencies, persons commanding police departments may properly consolidate, eliminate, or abolish positions to promote efficiency and economy.[11] Rendering the command structure of a police department less top heavy and streamlining its levels of operational authority are both legitimate restructuring objectives. Sutton v. Univ. of S. Colo., 870 P.2d 650, 652-54 (Colo.Ct.App.1994) (approving the reorganization of a university's police force to address "top heavy" management); McAlpin v. Shirey, 121 Ohio App.3d 68, 698 N.E.2d 1051, 1055-56 (1997) (affirming a reorganization of a police department to streamline its levels of operational authority). However, chiefs of police must prepare and carry out their reorganization plans in good faith and may not use them as subterfuges to terminate individuals while leaving their positions essentially intact.[12]
The Civil Service Commission rule at the heart of this appeal is Rule 3.11. At the time of this dispute, Rule 3.11 provided:
An Appointing Authority, in accordance with these rules and procedures and with the approval of the Director of HR, *667 may effect layoff actions in his department when necessary due to shortage of work or funds, or abolishment of position(s). Employees will be notified of the effective date of the action at least two weeks in advance. Layoff actions are defined as termination of employment, rollback in classification or rollback in increment. Layoff actions will be determined on a departmental basis and do not create any employee rights between departments.
When an employee is working in a position that is abolished, Civil Service Commission Layoff Policy ("Layoff Policy") 3.11(D) permits the Appointing Authority to "rollback" the employee  to place the employee in a lower, previously held position.
Employees who are either laid off or rolled back as a result of the abolishment of their position may appeal to the Civil Service Commission. Layoff Policy 3.11(H). In this context, when an employee appeals, the Commission may only consider whether the applicable rules and policies were properly followed,[13] and the employee has the burden of showing the irregularities in the manner in which the Appointing Authority and the Director of Human Resources applied Rule 3.11 and the other applicable rules and policies.[14]
Commander Miller insists that the Chief Serpas's reorganization plan does not really abolish the Assistant Chief of Police position. Rather, he insists that the plan eliminated the Assistant Chief of Police position but then created a position with essentially the same duties and called it Deputy Chief of Police. In other words, Commander Miller asserts that the Assistant Chief of Police position was not really abolished but was simply renamed and that this sort of personnel action cannot trigger a rollback in his rank from Assistant Chief of Police to Captain.
Courts have consistently cautioned that a civil service position is not effectively abolished if the government contemporaneously creates a new position with the same duties and simply gives the position another name. See generally, Webb v. Tenn. Dep't of Tourist Dev., No. M2004-02763-COA-R30CV, 2006 WL 2334852, at *5 (Tenn.Ct.App. Aug.10, 2006) (No Tenn. R.App. P. 11 application filed) (noting "the traditional practice of using a reduction in force as a pretext for removing and replacing undesirable employees by abolishing their positions and then re-establishing essentially the same positions to be filled with more acceptable employees"); see also Miller v. State ex rel. Peek, 249 Ala. 14, 29 So.2d 411, 417 (1947); Bardsley v. Colo. Dep't of Pub. Safety, 870 P.2d 641, 648 (Colo.Ct.App.1994); Rosenthal v. Gilroy, 208 A.D.2d 748, 617 N.Y.S.2d 509, 510 (1994); In re Appeal of Woods, 7 Ohio App.3d 226, 455 N.E.2d 13, 15 (1982). Thus, in cases of this sort, the courts compare the actual duties of the abolished position with the new position to determine whether the old position was truly abolished or eliminated or whether it was the incumbent employee who has been eliminated. Weston v. Ferguson, 8 Ohio St.3d 52, 457 N.E.2d 818, 820 (1983).
Prior to Chief Serpas's reorganization, the Metropolitan Police Department's upper level command structure consisted of five Assistant Chiefs of Police[15] who reported *668 to two Deputy Chiefs of Police[16] who reported to the Chief of Police. Commander Miller was the Assistant Chief of Police in charge of the West Patrol Bureau, and he reported to the Deputy Chief of Police for Field Operations. Following the reorganization, the upper level command structure consisted of three Deputy Chiefs of Police who reported to the Chief of Police.[17] Commander Miller remained in command of the West Precinct and reported to the Deputy Chief of Police for Field Operations.
The pivotal factual question in this case is whether the duties of the Assistant Chief of Police for the West Patrol Bureau and the Deputy Chief of Police for Field Operations are essentially the same. Despite the largely overlapping language in the written job descriptions, Chief Serpas testified, and the Civil Service Commission found, that the duties and responsibilities for the Assistant Chief of Police positions and the Deputy Chief of Police positions are different. The record contains substantial and material evidence to support this conclusion. First, the reporting relationships are clearly different. Second, the duties of the Deputy Chief of Police for Field Operations are far broader than the duties and responsibilities of the former Assistant Chief of Police for the West Patrol Bureau. Chief Serpas testified that the Deputy Chief of Police for Field Operations assumed some of the duties that had been performed by the Chief of Police. In addition, as the organizational charts plainly show, the Deputy Chief of Police for Field Services has far more duties and responsibilities than the Assistant Chief of Police for the West Patrol Bureau.[18]
Accordingly, we find that Commander Miller has failed to demonstrate that the record lacks substantial and material evidence to support the Civil Service Commission's finding that the duties and responsibilities of the Assistant Chief of Police for the West Patrol Bureau and those of the Deputy Chief of Police for Field Operations were not the same. We also find that the record contains substantial and material evidence to support the Civil Service Commission's conclusion that Chief Serpas's reorganization appropriately abolished the Assistant Chief of Police positions consistent with Civil Service Commission Rule 3.11 and then rolled back Commander Miller to the permanent rank of Captain with the temporary assignment rank of Commander.

IV.
Commander Miller also takes issue with Chief Serpas's increased reliance on temporary assignment positions in his reorganization plan. While he stops short of asserting that the Civil Service Commission *669 rules do not permit temporary assignment positions, Commander Miller argues that Chief Serpas could have streamlined the police department's command structure just as effectively by eliminating the Deputy Chief of Police positions, which are temporary assignment positions, and by requiring the Assistant Chief of Police positions to report directly to the Chief of Police. In other words, Commander Miller asks the courts to second-guess Chief Serpas's reorganization plan. Like the trial court, we decline to do so.
Discipline, regimentation, and adherence to duty and the chain of command enable police departments to carry out their responsibility to protect the public. Accordingly, the courts have consistently given police departments broad leeway to maintain discipline and regulate their personnel.[19] It is neither the role of the Civil Service Commission nor the courts to determine whether there are other, or even perhaps better, ways to reorganize the Metropolitan Police Department. These matters must be left to the expertise and experience of the persons with the legal mandate to lead the department. The courts' role is simply to determine whether the law's requirements have been met and to defer to an agency's decision if there is a sound basis in the record to support it. Bobbitt v. Shell, 115 S.W.3d at 512.
The record shows that the Metropolitan Police Department utilized temporary assignment positions before Chief Serpas's arrival. Chief Serpas decided that the use of these already existing temporary assignment positions created a better organizational structure for the top command positions in the department than the use of entrenched civil service classifications. The Director of Human Resources and the Civil Service Commission approved the use of these positions, and Commander Miller has failed to provide either a factual or legal basis to undermine these decisions. Accordingly, we would be exceeding the bounds of our authority and competency if we were to substitute our judgment for Chief Serpas's with regard to the use of temporary assignment positions.[20]

V.
Like, the trial court, we find that the record contains substantial and material evidence to support the Civil Service Commission's approval of Chief Serpas's reorganization plan and, thus, that the Commission did not act arbitrarily and capriciously when it approved the plan. Therefore, we affirm the trial court's April 11, 2006 order and remand the case to the trial court for whatever further proceedings consistent with this opinion may be required. We tax the costs of this appeal to Leonard Michael (Mickey) Miller and *670 his surety for which execution, if necessary, may issue.
WILLIAM B. CAIN, J., not participating.
NOTES
[1] Prior to becoming Nashville's chief of police, Chief Serpas had served for over two years as the Chief of the Washington State patrol. Prior to that command, Chief Serpas had been a member of the New Orleans Police Department for twenty-one years, rising to the second highest position in the department.
[2] This case does not involve the abolishment of the Major classification. This rank had fallen into disuse in the department, and several earlier studies had recommended that it be abolished. The lone incumbent had already decided to retire when Chief Serpas prepared his reorganization plan. Accordingly, no one's employment was affected by the abolishment of this position.
[3] Trial and appellate courts must use the same standard of review. Watts v. Civil Serv. Bd., 606 S.W.2d 274, 277 (Tenn. 1980); City of Memphis v. Civil Serv. Comm'n, 239 S.W.3d 202, 207 (Tenn.Ct.App.2007); Gluck v. Civil Serv. Comm'n, 15 S.W.3d 486, 490 (Tenn.Ct. App.1999).
[4] Tenn.Code Ann. § 4-5-322(h)(1).
[5] Tenn.Code Ann. § 4-5-322(h)(2).
[6] Tenn.Code Ann. § 4-5-322(h)(3).
[7] Tenn.Code Ann. § 4-5-322(h)(4).
[8] Tenn.Code Ann. § 4-5-322(h)(5).
[9] City of Memphis v. Civil Serv. Comm'n, 216 S.W.3d at 316.
[10] Charter of the Metropolitan Gov't of Nashville and Davidson County, Tenn. art. VIII, ch. 2, § 8.203.
[11] See e.g., Hartman v. City of Providence, 636 F.Supp. 1395, 1415-16 (D.R.I.1986); Charles v. Wilson, 52 Ill.App.2d 14, 201 N.E.2d 627, 632 (1964); Sheriff of Plymouth County v. Plymouth County Pers. Bd., 440 Mass. 708, 802 N.E.2d 71, 74-75 (2004); Civil Serv. Employees Ass'n, Inc. v. Rockland County Bd. of Coop. Educ. Servs., 39 A.D.3d 641, 834 N.Y.S.2d 263, 264 (2007); Silverman v. Commonwealth, Dep't of Educ., 70 Pa.Cmwlth. 444, 454 A.2d 185, 188-89 (1982); Anderson v. City of Sioux Falls, 384 N.W.2d 666, 669 (S.D.1986).
[12] See, e.g., Moore v. State, Dep't of Transp. & Pub. Facilities, 875 P.2d 765, 770 (Alaska 1994); Placer County Employees Ass'n v. Bd. of Supervisors, 233 Cal.App.2d 555, 43 Cal. Rptr. 782, 784 (1965); Buffalo Police Benevolent Ass'n, Inc. v. Makowski, 56 A.D.2d 732, 392 N.Y.S.2d 751, 753 (1977); Volesky v. N.D. Game & Fish Dep't, 566 N.W.2d 812, 817 (N.D. 1997); Penrod v. Ohio Dep't of Admin. Servs., 113 Ohio St.3d 239, 864 N.E.2d 79, 83 (Ohio 2007).
[13] Layoff Policy 3.11(H) provides that the "[d]eliberation by the Commission shall only be to consider facts which would show that the rules and procedures were not properly followed."
[14] Layoff Policy 3.11(H) places "[t]he burden. . . on the employee to show any irregularity in the application of the policy."
[15] These positions consisted of the Assistant Chief of Police for the Administrative Services Bureau, the Assistant Chief of Police for the Investigative Services Bureau, the Assistant Chief of Police for the Specialized Field Services Bureau, the Assistant Chief of Police for the East Patrol Bureau, and the Assistant Chief of Police for the West Patrol Bureau.
[16] These two positions consisted of the Deputy Chief of Police for Support Operations and the Deputy Chief of Police for Field Operations.
[17] These three positions consisted of the Deputy Chief of Police for Administrative Services, the Deputy Chief of Police for Investigative Services, and the Deputy Chief of Police for Field Operations.
[18] The Assistant Chief of Police for the West Patrol Bureau was responsible for the Central Sector, the North Sector, and the West Sector. In contrast, the Deputy Chief of Police for Field Services was responsible not only for these areas but also for the areas formerly assigned to the Assistant Chief of Police for the Specialized Field Services Bureau and the Assistant Chief of Police for the East Patrol Bureau.
[19] See e.g., Kokkinis v. Ivkovich, 185 F.3d 840, 845-46 (7th Cir.1999); Tindle v. Caudell, 56 F.3d 966, 971 (8th Cir.1995); Maciariello v. Sumner, 973 F.2d 295, 300 (4th Cir.1992); Vorbeck v. Schnicker, 660 F.2d 1260, 1263 (8th Cir.1981); Gasparinetti v. Kerr, 568 F.2d 311, 315-16 (3d Cir.1977); Stradley v. Andersen, 478 F.2d 188, 190 (8th Cir.1973); Angle v. Dow, 822 F.Supp. 1530, 1540 (S.D.Ala. 1993); Aycock v. Police Comm. of the Bd. of Aldermen, 133 Ga.App. 883, 212 S.E.2d 456, 458 (1975).
[20] See e.g., Stradley v. Andersen, 478 F.2d at 191 ("[T]hose officials who have spent their life in police work, who are trained in law enforcement discipline, possess far better empirical judgment of what is essential to achieve an efficient and disciplined police force than . . . the predeliction of individual judges."); Nevling v. Commonwealth, Dep't of Public Welfare, 106 Pa.Cmwlth. 625, 527 A.2d 610, 613 (1987).