IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 30, 2012 Session

## MICKEL HOBACK, v. CITY OF CHATTANOOGA

**Appeal from the Chancery Court for Hamilton County**
**No. 09-0965     Hon. Jeffrey M. Atherton, Chancellor, Part 2**

**No. E2011-00484-COA-R3-CV - Filed July 20, 2012**

The City Commission terminated plaintiff as a police officer.  He then filed a certiorari petition to the Chancery Court, where the Chancellor held that the Commission applied the wrong legal standard to the case, and the Chancellor reversed the Commission and ordered plaintiff to be reinstated as a policeman.  On appeal, we affirm the Trial Court's ruling that the Commission applied the wrong legal standard to the facts of the case, but vacate the reinstatement of the officer and remand to the City Commission to apply the proper legal standards in a new trial in plaintiff's case.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part, and Remanded to the Chattanooga City Council.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Phillip A. Noblett, Patrick P.H. Bobo, and Melinda Foster, Chattanooga, Tennessee, for the appellant, City of Chattanooga.

Phillip C. Lawrence, Chattanooga, Tennessee, for the appellee, Mickel G. Hoback.

### OPINION

This case originated in the courts when plaintiff/appellee filed an Application for Writ of Certiorari in the Chancery Court.  The Writ sought judicial review of the final order of the

Chattanooga City Council, that upheld plaintiff's termination as a police officer with the City of Chattanooga.

The Trial Court issued a Memorandum Opinion and Order on February 1, 2011, reversing the City Council's decision to sustain the Officer Hoback's termination and ordering that he be reinstated to the Chattanooga Police Department with back pay. The Chancery Court found the City Council was instructed to apply two inappropriate legal standards, thus the City Council's decision was "arbitrary". The Trial Court also found the City Council's findings were unsupported by substantial and material evidence in light of the entire record and that a reasonable person would draw a different conclusion from the evidence presented. The City of Chattanooga filed a Notice of Appeal on March 2, 2011.

Relative to this action, appellee also filed a case in the United States District Court for the Eastern District of Tennessee at Chattanooga, claiming that his termination from the Chattanooga Police Department violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.,* the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 791 *et seq.,* and the Uniform Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301 *et seq. Hoback v. City of Chattanooga*, 1:10-CV-74, 2011 WL 3420664 (E.D. Tenn. Aug. 4, 2011). While this appeal was pending, a jury trial was held in the federal case on September 12 - 15, 2011, and the jury in that case returned a verdict finding for appellee under the ADA claim and awarding him back pay of $130,000, front pay of $300,000 and emotional distress of $250,000, totaling $680,000 in damages. A judgment was entered on September 19, 2011 in accordance with the jury verdict. According to representations made during oral argument, the federal case is still at the district court level with post-trial motions pending.

A summary of the evidence presented before the City Council is as follows: Mickel G. Hoback began working as a police officer for the CPD in July 2000. Officer Hoback worked for the Chattanooga Police Department (CPD) continuously from his hire until March 19, 2002 when he went to basic training for the United States Army. Following basic training, he worked as a CPD officer until June 22, 2004 when his National Guard unit was activated and deployed to Iraq. Officer Hoback served in Iraq and was discharged from active duty on November 25, 2005. Following discharge from active duty, he resumed his employment as an officer with CPD. After Officer Hoback returned to his duties with the CPD, he was diagnosed with post-traumatic stress disorder (PTSD), which was secondary to his combat experience in Iraq. He was granted a service-connected disability by the Department of Veterans Affairs, effective May 22, 2008.

Officer Hoback received counseling and medication from the VA for PTSD. On or

about April 13th or 14th, 2009, an incident occurred that led to Officer Hoback's termination from the CPD. He met with his counselor because of a possible adverse reaction to medication prescribed by a VA medical doctor. The counselor suggested that Officer Hoback consult with a medical doctor regarding this issue, which he did. The medical doctor, Dr. Acosta, concluded that Officer Hoback was suicidal and she arranged that he be involuntarily committed to the VA hospital in Murfreesboro. Officer Hoback refused to be committed and he contacted his counselor, who advised him to drive himself to the VA hospital and voluntarily seek evaluation. He did so and he was voluntarily admitted for observation and he was discharged the following day.

The CPD became aware of this incident and on April 15, 2009 a letter from the Chief of Police was delivered to Officer Hoback. The letter informed him that he had been placed on administrative leave and that a "fitness for duty" psychological examination was required before he could return to duty. CPD hired psychologist Donald Brookshire to conduct the required examination and his report stated that Officer Hoback was "unfit for duty." Officer Hoback asked for another examination, which was performed by Terrell McDaniel, Ph.D. Dr. McDaniel concluded that Officer Hoback was "fit for duty". Dr. McDaniel's report contained the following summary of his conclusions:

> Mr. Hoback is fit for duty and should be returned to work as a patrol officer without restriction. He is not psychotic and there is no evidence of significant symptoms or signs that [sic] this time which would preclude his return to normal duties. Nevertheless, administration may wish to choose a position that provides acceptable levels of monitoring at the beginning of his re-engagement.

The Police Chief informed Officer Hoback that he was terminated from the CPD based on Dr. Brookshire's report. Officer Hoback appealed his termination to the Chattanooga City Council. A hearing was held before a panel of three members of the City Council on November 9, 2009.

The City Council was presented with two legal standards that were utilized by the Police Chief when he terminated Hoback. These standards are found in Tenn. Code Ann. § 38-8-106 and the Rules of the Tennessee Peace Officers Standards and Training Commission (POST). Two of the three members of the panel voted to confirm the CPD's termination of Officer Hoback .

We review the decisions of local civil service boards that affect the status of employees of local governments using the standard of review provided by the Uniform Administrative Procedures Act, Tenn. Code Ann. § 4–5–322(h). *Miller v. Civil Serv. Comm'n of Metro. Gov't of Nashville & Davidson County*, 271 S.W.3d 659, 664 (Tenn. Ct.

App. 2008) (citing Tenn. Code Ann. § 27–9–114(b)(1); *City of Memphis v. Civil Serv. Comm'n,* 216 S.W.3d 311, 315–16 (Tenn. 2007); *Tidwell v. City of Memphis,* 193 S.W.3d 555, 560 (Tenn. 2006)).

Pursuant to Tenn. Code Ann. § 4-5-322(h), both trial and appellate courts will modify a local civil service commission's decision affecting the status of an employee of local government only if the commission's action (1) violated constitutional or statutory provisions, (2) was in excess of its authority, (3) utilized unlawful procedure, (4) was arbitrary, capricious, or characterized by an abuse or clearly unwarranted use of discretion, or (5) is unsupported by substantial and material evidence. *Miller* at 664.

Tenn. Code Ann. 27-9-114(b)(1) refers to judicial review of decision by "civil service boards". Courts consistently apply section 27–9–114 to the decisions of municipal entities, such as the Chattanooga City Council here, stating that, while not called civil service boards, they effectively sit as civil service boards by making decisions that affected a worker's employment status. *Tidwell,* 193 S.W.3d at 561(citing *Yates v. City of Chattanooga,* No. E2000–02604–COA–R3–CV, 2001 WL 533351 (Tenn. Ct. App. May 21, 2001) (applying the statute to a city council); *Stephenson v. Town of White Pine,* No. 03A01–9705–CH–00185, 1997 WL 718974 (Tenn. Ct. App. Nov.13, 1997) (applying section 27–9–114 to a mayor and board of alderman); *Holder v. City of Chattanooga,* 878 S.W.2d 950 (Tenn. Ct. App.1993) (rejecting an argument that a city council did not qualify as a civil service board under section 27–9–114 when it was effectively sitting as a civil service board rather than as a legislative body).

The scope of the review of this Court and the lower courts is confined to the record made before the hearing committee, however, we review matters of law *de novo* with no presumption of correctness. *Burkhart v. City of Clarksville,* M2010-00050-COA-R3CV, 2011 WL 1233562 at * 4 (Tenn. Ct. App. Apr. 1, 2011)(citing *Davis v. Shelby County Sheriff's Dep't,* 278 S.W.3d 256, 264 (Tenn. 2009); *Metro. Gov't of Nashville v. Shacklett,* 554 S.W.2d 601, 604 (Tenn. 1977)). In reviewing the decision of the trial court, this Court must determine whether the trial court properly applied the standard of review found at Tenn. Code Ann. § 4–5–322(h). *Burkhart* at * 4 (citing *Jones v. Bureau of TennCare,* 94 S.W.3d 495, 501 (Tenn. Ct. App.2002) (quoting *Papachristou v. Univ. of Tennessee,* 29 S.W.3d 487, 490 (Tenn. Ct. App.2000))).

The issues raised on appeal are:

A.      Whether the Chancellor erred in finding that the decision of the Council panel was arbitrary because of the two legal standards the Council panel was instructed to apply?

B. Whether the Chancellor erred in finding that the Council panel's factual findings were unsupported by the substantial and material evidence?

C. Whether the Chancellor erred in granting reinstatement of the plaintiff to the Chattanooga Police Department with back pay?

The Trial Court began its analysis in its Memorandum Opinion by stating that the Chattanooga City Charter § 13.51 provides Officer Hoback the right to appeal his termination. Section 13.51 provides that "[n]o employee will be discharged or suspended without full rights of appealing the case in accordance with section 9008 of the Tennessee Code [Tenn. Code Ann. §§ 27-9-101 - 27-9-103]." Section 27-9-102 provides that "a party shall, within sixty (60) days from the entry of the order or judgment, file a petition of certiorari in the chancery court . . . stating briefly the issues involved in the cause, the substance of the order or judgment complained of, of the respects in which the petitioner claims the order or judgment is erroneous, and praying for an accordant review."

Appellant contends the judicial standard of review provided by Tenn. Code Ann. § 4-5-322(h) should not have been utilized by the Trial Court because the Chattanooga City Council Panel that rendered the decision of termination is not a "civil service board". Tenn. Code Ann. 27-9-114(b)(1) states that "[j]udicial review of decisions by civil service boards of a county or municipality which affects the employment status of a county or city civil service employee shall be in conformity with the judicial review standards under the Uniform Administrative Procedures Act, § 4-5-322.

As discussed in this Opinion, in the Standard of Review Section, courts have consistently applied section 27–9–114 to the decisions of municipal entities that do not bear the name "civil service board", but act as civil service boards by making decisions that affected a worker's employment status. *See Tidwell* at 561(citing *Yates*, 2001 WL 533351; *Stephenson ,* 1997 WL 718974; *Holder*, 878 S.W.2d 950.

Once the Trial Court determined that the standard of judicial review provided by the Uniform Administrative Procedures Act, the Court must first determine whether the Commission has identified the appropriate legal principles applicable to the case. *See, Miller v. Civil Serv. Comm'n of Metro. Gov't of Nashville & Davidson County*, 271 S.W.3d 664.

Following the instructions provided in *Miller*, the Trial Court first examined whether the City Council Panel applied the appropriate legal principles applicable to the case. The parties do not dispute that these two legal principles were the only ones presented to the City Council Panel. Tenn. Code Ann. § 38-8-106 sets forth certain requirements for persons employed as police officers, including a requirement that the officer be free of mental

disorders, as follows:

Any person employed as a full-time police officer, and any person employed or utilized as a part-time, temporary, reserve or auxiliary police officer or as a special deputy, shall:

(9) Be free of all apparent mental disorders as described in the Diagnostic and Statistical Manual of Mental Disorders, Third Edition (DSM-III) of the American Psychiatric Association. An applicant must be certified as meeting these criteria by a qualified professional in the psychiatric or psychological field.

Tenn. Code Ann. § 38-8-106.

The Tennessee POST Commission regulations also furnish a standard regarding the mental state of police officers:

All full-time commissioned law enforcement officers employed by an agency required to meet minimum standards must meet pre-employment requirements and, upon completion of the required basic training, will be issued a POST certificate.

(1)     Full-time Commissioned Law Enforcement Officer Pre-employment Requirements.  The Commission shall issue a certificate of compliance to any person who meets the qualifications for employment and satisfactorily completes a POST certified Basic Law Enforcement Training Academy.  All persons employed as a full-time law enforcement officer, after July 1, 1982, must be certified by POST and shall comply with the following preemployment requirements:

* * *

(j) Have been certified by a Tennessee Licensed Health Care Provider qualified in the psychiatric or psychological fields as being free from any disorder, as set forth in the current edition of the DSM at the time of the examination, that would, in the professional judgment of the examiner, impair the subject's ability to perform any essential function of the job.

1.      No waiver will be granted for mental disorders.

2.      A new evaluation shall be required:

a.      after a six (6) month break in full-time law enforcement service, or

b.    upon the request of the employing agency, for good cause.

Tenn. Comp. R. & Regs. 1110-02-.03.

The Trial Court held that Tenn. Code Ann. § 38-8-108 should not have been presented to the City Counsel Panel as a legal principle they should rely on when considering Officer Hoback's termination as the statute is "not now legally recognized nor was it available for use in this case." The Trial Court stated that a Consent Order entered on April 15, 2003 in *United States of America v. State of Tennessee*, Civil Action No. 1:98-1357, in the U.S. District Court for the Western District of Tennessee, Eastern Division at Jackson confirmed that Tenn. Code Ann. § 38-8-106 will not be enforced. The Trial Court also noted that "[t]o date, our legislature has yet to address this issue." The Trial Court was not in error when it held that the statute was no longer valid and should not have been presented as a standard by which the Panel could determine whether termination was justified.

The United States Department of Justice, filed suit against the State of Tennessee alleging that several Tennessee statutes, including Tenn. Code Ann. §38-8-108, violate the Americans with Disabilities Act of 1990, "by creating a blanket exclusion of all individuals with 'apparent mental disorders' from certain types of employment." The United States alleged that the statutes at issue, including Tenn. Code Ann. §38-8-108, discriminated against individuals on the basis of disability in violation of . . . . [the ADA] by using qualifications standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities, when the standard, test or other selection criteria, as used by the covered entity, has not been shown to be job related for the position in question and consistent with business necessity." The parties agreed to a Consent Order and Final Judgment that provided in part: A job applicant or incumbent employee may not be disqualified on the basis of a disability unless, after undertaking an individualized assessment of the individual, an employer determines that : (1) the individual cannot perform the essential functions of the job, with or without accommodations, including, with respect to incumbent, employees, reassignment, and/or (2) the individual would pose a significant risk to the health or safety of self or others that cannot be reduced or eliminated by reasonable accommodation. The State further agreed that the Tennessee Department of Personnel would present to the Governor a request to rescind the four statutes at issue, including Tenn. Code Ann. §38-8-108, which the Governor would submit to the Tennessee Legislature in 2003, and thereafter as necessary. The State also agreed that the Tennessee Office of the Attorney General would inform the Tennessee Legislature that the four statutes are invalid because they conflict with federal law. The State agreed to not enforce or implement the statutes and to promulgate new written policies consistent with the ADA to replace the current policies that implement the statutes. The State agreed to inform all political subdivisions in writing that the statutes at issue, including

Tenn. Code Ann. §38-8-108 should not be applied, implemented or enforced.[1]

We affirm the Trial Court's conclusion on this issue.

The next issue is that the Council's findings were unsupported by substantial and material evidence. This issue is moot because the action is being remanded to the City Council for application of the correct legal standards.

Finally, issue is taken with the Chancellor's reinstatement of plaintiff with back pay. The Trial Court should have remanded the case back to the City Council for re-consideration of Officer Hoback's termination under the standards set out in *United States of America v. State of Tennessee* rather than reinstating him to his former employment position with back pay.

The Trial Court correctly found that the City Council should have been instructed as to the legal standards set forth in the consent order in *United States of America v. State of Tennessee* rather than the standards in Tenn. Code Ann. § 38-8-108. As the legal standards in the consent order should have been applied, there was no need for the Council to have been instructed on the POST rule. The cause is remanded to the Chattanooga City Council for reconsideration under the standards set forth in the consent order noted, and all other issues on appeal are declared moot.

The Trial Court is directed to remand the case to the City Council with instructions, and the cost of this appeal is assessed to the City of Chattanooga.

 

_____
HERSCHEL PICKENS FRANKS, P.J.

---

[1]There was testimony before the City Commission that attempts to change or modify the statute to comply with the ADA has been met with resistence from law enforcement officials such as the "chiefs and sheriffs association. . . ."