IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 19, 2020 Session

## BENJAMIN JORDAN FRAZIER ET AL. v. TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES

**Appeal from the Chancery Court for Williamson County**
**No. 47160      Joseph A. Woodruff, Judge**

———————————————————————

**No. M2020-00368-COA-R3-CV**

———————————————————————

The Tennessee Department of Children's Services denied an application for adoption assistance payments because the adoptive children did not meet federal eligibility criteria. The adoptive family petitioned for judicial review. And the chancery court reversed. We conclude that the administrative agency's decision was based on an erroneous interpretation of federal law. So we affirm the chancery court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Herbert H. Slatery III, Attorney General and Reporter, Andrée Sophia Blumstein, Solicitor General, Amber L. Seymour, Assistant Attorney General, for the appellant, Tennessee Department of Children's Services.

Kevin W. Weaver and Meredith Brasfield, Cordova, Tennessee, for the appellees, Audrey Lee Frazier and Benjamin Jordan Frazier.

# OPINION

## I.

### A.

The Tennessee Department of Children's Services ("DCS") petitioned to remove two children from their home based on allegations of abuse and neglect. After a hearing, a juvenile court adjudicated the children dependent and neglected. Finding that it was contrary to the children's best interest to remain in the mother's custody, the court awarded custody to DCS. DCS placed the children in an approved foster home.

Despite DCS's efforts, the parents never made the changes necessary for the children to safely return home. Based on the parents' lack of progress, the juvenile court approved a revised permanency plan with a new goal of exiting custody with a relative.

On October 30, 2014, the court placed the children in a subsidized permanent guardianship with relatives, their paternal aunt and uncle. The court found that the guardianship arrangement was in the children's best interests because it provided continuity of care and allowed their integration into a stable and permanent home. The aunt and uncle were willing and able to care for the children. And the guardianship arrangement allowed the children to "have quality interaction with their parents." But the aunt and uncle could not return the children to their mother or turn them over to another custodian without court approval.

Less than a year later, the aunt and uncle asked the juvenile court to dissolve the guardianship. After hearing from the uncle, the court agreed. The court found that the previous order "should be modified as the current placement for said children . . . is no longer available." On June 5, 2015, the court terminated the subsidized permanent guardianship and awarded custody of the children to the Tennessee Baptist Children's Home ("TBCH"), a private licensed child placement agency under contract with the State. A representative from TBCH later testified that the children were left at the courthouse at the conclusion of the guardianship hearing. As it was late on a Friday afternoon, the juvenile court magistrate called TBCH for assistance.

TBCH's efforts to reunite the children with their parents or their former guardians were unsuccessful. So the agency placed the children with private foster parents, Jordan and Audrey Frazier, on July 29, 2016.

A chancery court later terminated the parental rights of both parents to these children. The court found clear and convincing evidence of multiple statutory grounds for

2

termination and that termination of parental rights was in the children's best interests. The court awarded "complete custody, control and guardianship" of the children to TBCH.

On July 7, 2017, the foster family—desiring to adopt the children—applied to DCS for adoption assistance. DCS denied their request. Specifically, DCS denied their application because:

> Children who are in the guardianship of a Licensed Child Placing Agency have to be determined Title IV-E eligible in Tennessee for active Adoptive Assistance. The children did not meet Title IV-E eligibility requirements for active adoption assistance, and the application was denied.

The adoptive family requested a hearing before an administrative law judge.

B.

At the administrative hearing, two DCS witnesses, Vicki Davis and Sherry May, elaborated on the basis for the denial of adoption assistance. Ms. Davis was the program manager in the adoption assistance unit. Under DCS's adoption assistance policy, "[c]hildren who are legally free for adoption, are being adopted, and meet the criteria of special needs will be eligible to receive Adoption Assistance."

As Ms. Davis related, these children met all of the state's special needs criteria. But because the children were not in DCS custody at the initiation of adoption proceedings, they were not eligible for state-funded adoption assistance payments. The only remaining option was the federal adoption assistance program as provided in Title IV-E. DCS's child welfare unit was responsible for determining whether a child met the Title IV-E eligibility criteria.

Sherry May was the program director for the child welfare unit. As she explained, her unit determined whether a child met Title IV-E criteria for several federally-funded programs administered by DCS, including foster care maintenance payments, adoption assistance, and subsidized permanent guardianships. Ms. May agreed that the children qualified for foster care maintenance payments and subsidized permanent guardianship payments. But the children's previous eligibility for other Title IV-E programs did not mean that they automatically qualified for adoption assistance.

Ms. May identified the two DCS policies that governed her decision. One policy specifically addressed adoption assistance. The other policy applied to the foster care maintenance program. These children met nearly all the relevant Title IV-E criteria. But, according to DCS, one element was missing. To be eligible for Title IV-E adoption assistance payments, the children had to be in the care of a licensed child placement agency pursuant to a removal order with a judicial determination that it was contrary to the

3

children's welfare to remain in the home. Ms. May found the children ineligible because the first order placing the children in TBCH's custody did not include a "contrary to the welfare" finding.

She acknowledged that the critical language was present in the order removing the children from the parents' home. But DCS made its determination based on the June 2015 order that transferred custody to TBCH. According to DCS's foster care policy, the contrary to the welfare determination must be made in the first removal order for each foster care episode. So Ms. May focused on the 2015 order—the removal order preceding the current custody episode.

The administrative law judge upheld the denial. The judge ruled that the 2015 order was a removal order because it removed the children from the custody and guardianship of the paternal aunt and uncle. And it lacked the required finding. Although the previous order in 2013 had the necessary language, the judge reasoned that each custody episode must be examined individually for Title IV-E eligibility. The children could not be eligible for adoption assistance based on a judicial determination from a previous custody episode.

The adoptive family petitioned for judicial review. In a detailed memorandum opinion and order, the chancery court reversed. The court ruled that DCS's policies were based on an erroneous interpretation of federal law. DCS "incorrectly conflate[d] [two federal] programs and denied the . . . application for adoption assistance based on an unmet eligibility requirement for foster care payments." In viewing applications for adoption assistance through a "custodial episode" lens, DCS added a redetermination requirement to adoption assistance eligibility, which is contrary to federal law.

## II.

When reviewing administrative decisions, trial courts and appellate courts use the same standard of review. *See, e.g.*, *Humana of Tenn. v. Tenn. Health Facilities Comm'n*, 551 S.W.2d 664, 668 (Tenn. 1977); *Miller v. Civil Serv. Comm'n*, 271 S.W.3d 659, 664 n.3 (Tenn. Ct. App. 2008). The scope of our review is set by the Uniform Administrative Procedures Act.

> The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

4

(5) (A) Unsupported by evidence that is both substantial and material in light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h) (2015).

To receive Title IV-E federal funding, states must have an approved plan to provide both foster care maintenance payments and adoption assistance payments in accordance with federal law. 42 U.S.C. § 671(a)(1) (Supp. 2019). The state plan may include a provision for kinship guardian assistance payments. *Id.* § 671(a)(28). DCS administers these Title IV-E programs in Tennessee.

DCS urges this Court to reverse the chancery court's decision and affirm the denial of adoption assistance because the denial was consistent with both federal law and DCS policy. We generally defer to an administrative agency's interpretation of its own rules "unless it is plainly erroneous or inconsistent with the regulation." *Pickard v. Tenn. Water Quality Control Bd.*, 424 S.W.3d 511, 522 (Tenn. 2013) (quoting *BellSouth Advert. & Publ'g Corp. v. Tenn. Regulatory Auth.*, 79 S.W.3d 506, 514 (Tenn. 2002)). But statutory construction and the application of a statute to the facts of the case are questions of law, which we review de novo. *See id.* at 523; *Jones v. Bureau of TennCare*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002).

Under Title IV-E, states may make adoption assistance payments only if the adoptive child meets federal eligibility criteria. 42 U.S.C. § 673(a)(2)(A) (Supp. 2019). DCS submits that the children did not satisfy one criterion. According to DCS, the juvenile court did not award custody to TBCH based on "an involuntary removal . . . from the home in accordance with a judicial determination to the effect that continuation in the home would be contrary to the welfare of the child." *Id.* § 673(a)(2)(A)(ii)(I)(aa)(AA).

The facts are not in dispute. The juvenile court removed these children from their parents' home in 2013. And the 2013 removal order contained a contrary to the welfare determination. DCS concedes that, if the 2013 order were the relevant removal order, these children would be eligible for federal adoption assistance payments. But DCS maintains that the 2015 order was the relevant removal order. The 2015 order removed the children from the home of their paternal aunt and uncle and led to the current custody episode. But the critical language does not appear in the 2015 order.

DCS argues that eligibility for Title IV-E adoption assistance payments depends on whether the critical language appears in the first order removing the child from the home. And the children's home prior to the current custody episode was in the home of their aunt

5

and uncle. "Home" is not defined in the statute. We agree that a common definition of "home" is "dwelling place." *See Home*, BLACK'S LAW DICTIONARY (11th ed. 2019). And, for a period of time, the children's home was with their aunt and uncle. Still, DCS does not dispute that the children were involuntarily removed from the home with their parents in 2013. Nothing in the adoption assistance statute limits the meaning of "home" to the home during this custody episode. To accept DCS's interpretation, we would need to read additional language into the statute. This we cannot do. *See Coleman v. State*, 341 S.W.3d 221, 241 (Tenn. 2011) (Courts "must be circumspect about adding words to a statute."). "When statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend [or restrict] the meaning of the language." *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009).

DCS is applying an eligibility standard from the foster care maintenance payments program to an application for adoption assistance. Admittedly, both programs are found in Title IV-E of the Social Security Act. *See* 42 U.S.C. § 671(a)(1). But the eligibility criteria for each program differs. *See id.* §§ 672, 673 (Supp. 2019).

Eligibility for foster care maintenance payments depends on the child's need and whether "the removal and foster care placement met, and the placement continues to meet," specified requirements. *Id.* § 672(a)(1)(A). Both the removal and the foster care placement must be "in accordance with . . . a judicial determination to the effect that continuation in the home from which removed would be contrary to the welfare of the child." *Id.* § 672(a)(2)(A)(ii). To meet this statutory mandate, a new removal order with the required language must accompany each new foster care placement.

The same cannot be said for eligibility for adoption assistance payments. Adoption assistance payments are not tied to custody episodes. And custody changes do not necessarily disrupt eligibility. *See id.* § 673; 45 C.F.R. §§ 1356.40-1356.41 (2020). To the contrary, the adoption assistance statute expressly preserves the eligibility of a child whose prior adoption has been dissolved. *See* 42 U.S.C. § 673(a)(2)(C)(ii) (A child who was previously deemed eligible for adoption assistance remains eligible even if a "prior adoption has been dissolved and the parental rights of the adoptive parents have been terminated or . . . the child's adoptive parents have died."). Similarly, an intervening legal guardianship does not preclude eligibility for adoption assistance payments should the legal guardian wish to adopt the child. *Id.* § 673(a)(2)(D).

Yet, DCS maintains that eligibility for adoption assistance payments must be established within the current custody episode because "there is some overlap" between the two federal programs. We recognize that the Department of Health and Human Services advises states in its Child Welfare Policy Manual that aspects of the contrary to the welfare requirements in the federal regulations implementing the foster care maintenance program also apply to applications for adoption assistance. *See* 45 C.F.R. § 1356.21(c)-(d) (2020). Those regulations warn that the "contrary to the welfare

6

determination must be made in the first court ruling that sanctions (even temporarily) the removal of a child from home." *Id.* § 1356.21(c). If the necessary language is not in the first removal order, "the child is not eligible for title IV-E foster care maintenance payments for the duration of that stay in foster care." *Id.*

Even so, we are not persuaded that this asserted overlap justifies DCS's policy of imposing a custody window on applications for adoption assistance. The policy manual does not even mention custody episodes. Rather, the manual simply emphasizes that the critical language must appear in the first removal order, which makes the 2013 removal order all the more relevant here.[1]

We conclude that the administrative agency's decision was an abuse of discretion. *See H & R Block E. Tax Servs., Inc. v. State, Dep't of Commerce & Ins., Div. of Ins.*, 267 S.W.3d 848, 855 (Tenn. Ct. App. 2008) ("An error of law is an abuse of discretion 'by definition.'" (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996))); *see also Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110-11 (Tenn. Ct. App. 1993) (explaining that the arbitrary and capricious standard of review "requires the court to determine whether the administrative agency has made a clear error in judgment"). DCS erroneously interpreted the federal statute as including a per-custody-episode requirement for adoption assistance payments. Federal law only requires that the child be involuntarily removed from the home in accordance with a judicial "contrary to the welfare"

---

[1] The HHS Child Welfare Policy Manual provides, in relevant part:

> To fulfill the eligibility criteria in [42 U.S.C. § 673(a)(2)(A)] when a child's removal from the home is the result of court action, there must be a judicial determination to the effect that to remain in the home would be contrary to the child's welfare. Since a child's removal from the home must occur as a result of such a judicial determination, the determination must be made in the first court ruling that sanctions (even temporarily) the removal of a child from the home. If the determination is not made in the first court ruling pertaining to removal from the home, the child is not eligible for title IV-E adoption assistance pursuant to an involuntary removal. The contrary to the welfare finding must be explicit and made on a case-by-case basis. Items such as nunc pro tunc orders, affidavits, and bench notes are not acceptable substitutes for a court order. Only an official transcript is sufficient evidence of the judicial determination. A judicial determination regarding reasonable efforts to prevent removal or reunify the family, although required for title IV-E foster care, is not a requirement for title IV-E adoption assistance eligibility.

*HHS Child Welfare Policy Manual, 8.2B.7*, DEP'T OF HEALTH AND HUMAN SERVS., https://www.acf.hhs.gov/cwpm/public_html/programs/cb/laws_policies/laws/cwpm/policy_dsp.jsp?citID=20 (last visited Dec. 29, 2021).

determination. Here, the children were removed from their home based on such a determination.

## III.

The denial of adoption assistance payments was an abuse of discretion because it was based on an erroneous interpretation of federal law. So we affirm the chancery court's decision and remand for further proceedings consistent with this opinion.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE