IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 2, 2023 Session

## THOMAS PATTERSON v. TENNESSEE DEPARTMENT OF SAFETY AND HOMELAND SECURITY ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 17-0744-I          Patricia Head Moskal, Chancellor**
_____

**No. M2022-00740-COA-R3-CV**
_____

An administrative law judge entered an order of default against Appellant for failing to appear at a resetting of his contested case hearing on a civil asset forfeiture. On appeal, the Commissioner's Designee for the Department of Safety and Homeland Security affirmed the administrative law judge's entry of default, denying Appellant's request to set aside the same order. Appellant appealed the Commissioner Designee's decision to the Chancery Court, raising that the administrative officials lacked authority to default his case because they did not swear an oath of office commensurate with that sworn by judicial branch judges of the Tennessee state judiciary. The Chancery Court affirmed the administrative officials' decisions. Appellant appealed to this court. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and W. NEAL MCBRAYER, JJ., joined.

Herbert S. Moncier, Knoxville, Tennessee, for the appellant, Thomas Patterson.

Jonathan Skrmetti, Attorney General and Reporter; Matt Rice, Solicitor General; and Miranda Jones, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Safety and Homeland Security.

B. Thomas Hickey, Jr., Chattanooga, Tennessee, for the appellee, Bradley County, Tennessee.

**OPINION**

**I.**

In 2015, Appellant Thomas Patterson drove his 1994 Ford Ranger (the Ranger) to a Chattanooga home in furtherance of an illegal drug sale. Local law enforcement deployed a confidential informant to infiltrate and document the sale. Based on the confidential informant's observations, police seized the Ranger, which has remained in law enforcement custody ever since.

The Tennessee Department of Safety and Homeland Security (the Department) held a forfeiture warrant hearing concerning the Ranger seizure in August 2015, followed by a confiscation hearing in December 2015. Mr. Patterson raised several constitutional and statutory challenges to the Ranger's seizure at the December hearing, which prompted the presiding administrative law judge (ALJ) to schedule a "contested case hearing" for February 24, 2016.

That contested case hearing never occurred. Following the December 2015 hearing, Mr. Patterson and the Department's extended motions practice, discovery disputes, and several requests to reschedule hearings resulted in the hearing being ultimately pushed to November 16, 2016. Mr. Patterson filed a motion to dismiss "for Vindictiveness, Retaliation and Misconduct" on February 1, 2016, which the administrative tribunal denied on February 18, 2016. When the contested case hearing was then set for February 24, 2016, Mr. Patterson's counsel asked to have the hearing rescheduled due to a docket conflict in Knox County. Then, on March 5, 2016, the Department filed a motion to dismiss Mr. Patterson's objections to the Ranger seizure, which Mr. Patterson opposed. The administrative tribunal attempted to conduct a hearing on April 27, 2016, but discovery disputes resulted in the hearing being continued. While the motion to dismiss was pending, Mr. Patterson also attempted to have the sitting ALJ recused. A special hearing concerning Mr. Patterson's recusal motion was set to be heard on May 27, 2016, but, according to an order of recusal that was entered "in order to avoid even the slightest appearance of impropriety," Mr. Patterson "changed his mind regarding a special setting of this matter on May 27, 2016," meaning the special recusal hearing never actually occurred. After returning to the general docket, Mr. Patterson received a notification that the reset contested case hearing would be scheduled to be heard on August 27, 2016. However, before that hearing could be held, the administrative tribunal granted the Department's motion to dismiss based on a purported lack of standing. Mr. Patterson sought reconsideration of that order, and the administrative tribunal granted his motion, nullifying the standing-based dismissal of his constitutional objections. Following the grant of his motion for reconsideration, the Department sent Mr. Patterson a notification via certified mail on October 13, 2016, that Mr. Patterson's contested case hearing would occur in Chattanooga, Tennessee, on November 16, 2016, at 10:00 A.M. The written notice included the relevant statutory authority allowing the Department to hold a contested case hearing, included the

address of the hearing site, and noted that Mr. Patterson's case was the only case scheduled to be considered at the hearing.

Problematically, neither Mr. Patterson nor his counsel attended this November 2016 hearing. The ALJ, counsel for the Department, and the Department's witnesses waited approximately thirty minutes to see if Mr. Patterson or his counsel, Mr. Herbert Moncier, were running late. Neither appeared nor did they communicate regarding their absence. The Department then checked the lobby, but neither Mr. Patterson nor Mr. Moncier were found. After this investigation, the ALJ began the hearing, noting for the record that Mr. Patterson was not present and that the Department had searched for him and his attorney in the lobby. The ALJ then asked counsel for the Department for advice on how to proceed. The Department orally moved for an entry of default, arguing that the relevant administrative rules and regulations allowed for such a motion under the circumstances. Though the Department did not put on any witnesses, counsel explained the steps the Department took in Mr. Patterson's case to inform him of the November hearing, provided proof of the certificate of service and return receipt related to its October letter, and represented to the ALJ that the Department delivered a physical copy of the hearing notice to Mr. Moncier's office in Knoxville. Based on these representations, a re-examination of its docket, and the physical return receipt, the ALJ granted the Department's motion. In a later-entered initial order of default, the ALJ explained her reasoning and noted that the entry of default mooted Mr. Patterson's constitutional and statutory arguments.

Shortly after receiving the initial order, Mr. Patterson moved for reconsideration. Mr. Patterson supported his motion with affidavits from Mr. Moncier and Mr. Moncier's legal secretary. Both affiants explained that the October 13, 2016 letter providing notice of the November 2016 hearing arrived at the office, but, due to "unknown reasons, and by neglect and inadvertence," the contested case hearing was never entered in Mr. Moncier's digital calendar. The ALJ denied Mr. Patterson's motion for reconsideration on February 7, 2017.

Mr. Patterson appealed the ALJ's decision to the Designee, arguing that the entry of default was inappropriate and, in the alternative, that the affidavits created good cause to set aside the entry of default. Mr. Patterson failed to outline a meritorious argument with regard to the Ranger seizure in his request to set aside the entry of default.

The Designee affirmed the ALJ's decisions related to the original default and Mr. Patterson's motion for reconsideration on May 22, 2017. The Designee concluded that the ALJ adhered to the Department's rules on default motions, pointing out that the Department exceeded the rule's basic requirements by searching for Mr. Patterson and Mr. Moncier in the lobby. Additionally, the Designee disagreed with Mr. Patterson's argument that the two affidavits he provided established good cause to set aside the default. Citing Tennessee Rule of Civil Procedure 55, the Designee concluded that setting aside the default would prejudice the Department, which had continued to bear the costs and burdens

associated with storing the Ranger; that Mr. Patterson did not assert a meritorious defense with regard to the seizure; and that Mr. Patterson's conduct caused the circumstances that led to the default being entered in the first place, namely the repeated resetting of the contested case hearing and Mr. Patterson's counsel's failure to attend the November 2016 contested case hearing.

Mr. Patterson filed a petition for judicial review in the Davidson County Chancery Court on July 18, 2018. According to the Chancery Court, "heavy motions practice," "a lot of briefing," and "multiple interludes where absolutely nothing happened in the case" prolonged the proceedings for nearly five years. Several developments during that quagmire warrant discussion. First, the Chancery Court proceedings featured a new defendant: Bradley County (the County). Mr. Patterson did not officially add Bradley County to the caption of the case when he filed his petition for judicial review, opting instead to characterize the County as an indispensable party in the main text of his petition. The County was an indispensable party, Mr. Patterson argued, because it possessed the Ranger. Relying on his constitutional and statutory claims, Mr. Patterson asserted that the County would be required to return the Ranger and that two federal statutes would require the County to pay Mr. Patterson's attorney's fees if he prevailed. Though Mr. Patterson perfected service on the County in the first instance, the County has maintained that Mr. Patterson's failure to list it as a party in the caption has led to the County not being copied on correspondence and not receiving relevant filings in the case. The County insisted, both in the Chancery Court and now on appeal, that it was classified as an indispensable party in error.

Second, Mr. Patterson used his appeal to Chancery Court to raise a new threshold argument: that the ALJ's initial order granting default and the Designee's final order affirming his default were unlawful and void because neither the ALJ nor the Designee took an oath of office before presiding over what he argued was essentially a judicial proceeding. Mr. Patterson originally pleaded this claim as a state constitutional claim, and later requested leave to amend his petition in order to raise a federal constitutional claim to accompany his state constitutional claim. The Chancery Court granted that request. However, in doing so, the Chancery Court afforded Mr. Patterson leave for the limited purpose of amending "Count I," his oaths of office claim, rather than amending other parts of his petition. Mr. Patterson deviated from those instructions, ignoring Count I entirely in favor of amending Count XVIII, which was not relevant to the oaths of office claim. Upon motion from the Department, the Chancery Court struck Mr. Patterson's amended petition. Mr. Patterson later submitted a document that he styled a brief but which purported to be a properly amended petition for judicial review. The Department pointed out that this document did not comply with the Tennessee Rules of Civil Procedure, and the Chancery Court agreed.

Third, and relatedly, the Chancery Court bifurcated Mr. Patterson's petition into what it believed were threshold matters for initial adjudication—the oaths of office claim

- 4 -

and the claims regarding the propriety of the default—in order to streamline Mr. Patterson's presentation. It appears that at least one factor driving this decision was the number and density of Mr. Patterson's filings in this case. The Chancery Court eventually admonished Mr. Patterson for his "multiple and voluminous filings" and for making it "unnecessarily difficult to sift through [Mr. Patterson's] arguments and identify those claims that are currently before the Court."

The Chancery Court held a final hearing on the two issues on December 21, 2021. Regarding his oaths of office argument, Mr. Patterson asserted at the hearing that the ALJ and the Designee exercised essentially judicial functions by adjudicating claims based on contested facts and legal principles. Based on that premise, he reasoned that the Tennessee Constitution, as well as several state statutes, required the ALJ and Designee to take the judicial oath of office prior to hearing his case. Regarding the default, Mr. Patterson pointed out that his counsel and his legal secretary filed affidavits stating they were not aware of the November 2016 hearing prior to its occurrence and argued that this constituted a notice defect, warranting the setting aside of the default. The Chancery Court observed that the Commissioner's Designee made a factual finding that Mr. Patterson received notice of the November 2016 hearing, which Mr. Patterson did not deny.

On May 12, 2022, the Chancery Court entered a final order affirming the entry of default against Mr. Patterson and rejecting his oaths of office argument. The Chancery Court noted that the Designee appropriately carried out the review process for evaluating the appropriateness of the default, and, on de novo review, concluded that the same three-step process did not preponderate against the ALJ's original decision to grant the Department's oral motion for default. The Chancery Court then concluded that Mr. Patterson's oaths of office argument had been addressed in analogous circumstances by the Tennessee Supreme Court but ultimately rejected. Finally, the Chancery Court noted that, because Mr. Patterson did not name the County as a party during the administrative proceedings, the record was underdeveloped as it pertained to the County. Despite the underdeveloped nature of the record, the Chancery Court concluded that its affirmance of the default necessarily defeated Mr. Patterson's claims against the County.

Mr. Patterson appealed to this court. He raises seven issues in his opening brief. Although Mr. Patterson raises on appeal before this court several issues tied directly to the merits of the Ranger seizure, which the Chancery Court did not reach, he also raises the following restated issues that directly pertain to the Chancery Court proceedings: (1) whether the ALJ and the Department's Commissioner's Designee had authority to resolve his case despite not having sworn the oath of office required of judges in the State of Tennessee, (2) whether the Chancery Court erred in affirming the entry of default, and (3) whether the Chancery Court appropriately resolved Mr. Patterson's claims for attorney's fees against the County. On appeal, the Department and the County defend the Chancery Court's decision.

- 5 -

II.

Mr. Patterson's oath issue presents a matter of a critical threshold nature, requiring our consideration before turning to Mr. Patterson's other contentions. According to Mr. Patterson, neither the ALJ nor the Designee had the authority to act because neither of those individuals swore an oath of office that resembles the oath taken by members of the Tennessee judiciary. The Department concedes that neither the ALJ nor the Designee took a judge's oath of office. Mr. Patterson alleges that their failure to do so constitutes a structural defect in his case, rendering their decisions void as a matter of law.[1] The Department disagrees, arguing that every authority Mr. Patterson cites for the proposition that the ALJ and the Designee were required to swear an oath of office before hearing his case is inapplicable to these circumstances.

Before delving into the question of whether a judicial oath is required, we briefly examine a step before the threshold in the form of a contention raised by Mr. Patterson during oral argument before this court. At oral argument, Mr. Patterson asserted this court lacks subject matter jurisdiction based upon the ALJ and Designee's failure to take a judicial oath of office.[2] Because subject matter jurisdiction cannot be conferred through waiver, we address this contention. *Recipient of Final Expunction Ord. in McNairy Cnty. Cir. Ct. Case No. 3279 v. Rausch*, 645 S.W.3d 160, 167 (Tenn. 2022) (noting that "subject matter jurisdiction cannot be conferred by consent or waiver").

As we understand Mr. Patterson's contention, if the ALJ lacked the authority to enter a default and the Designee lacked the authority to affirm that default, those legally invalid orders did not build a proper foundation for the Chancery Court to review those determinations and, consequently, we would have no authority to review all of these decisions on appeal. Mr. Patterson's framing puts the cart before the horse, assuming the invalidity of the administrative tribunal orders. This argument also misses a distinction

---

[1] There is some case law suggesting that the decisions of public officials may not necessarily be rendered void as a result of a failure to adhere to an oath requirement. *Ridout v. State*, 30 S.W.2d 255 (Tenn. 1930) (holding indictment for voluntary manslaughter valid even though a substitute judge who was not qualified to act in that capacity presided over the indictment); *Farmers & Merchants' Bank v. Chester*, 25 Tenn. 458, 478-81 (1846) (holding acts of deputy clerk who did not take required oath were nonetheless valid); *United States v. O'Neal*, No. 3:08-CR-107, 2013 WL 1089876, at *3 (E.D. Tenn. Mar. 15, 2013) (rejecting defendant's argument that evidence in criminal trial should have been suppressed because the law enforcement officers involved in gathering the evidence had not properly executed their oaths and citing to *Farmers & Merchants Bank v. Chester*, 25 Tenn. 458 (1846), for the proposition that "[e]ven if a proper oath has not been taken, one legally appointed to an office is an officer, and his official acts are valid as to the public and all third parties"). Because we ultimately conclude that Mr. Patterson's arguments regarding the necessity of an oath for the ALJ and the Designee are unavailing, we need not further examine this question.

[2] It is not clear how an argument that this court is without subject matter jurisdiction is ultimately beneficial to Mr. Patterson seeking relief.

between challenging the ability of the agency tribunal in its entirety to hear the case, which would seem to undermine subject matter jurisdiction, versus the mere ability of a particular decision-maker to oversee the case.

Even if Mr. Patterson's argument were correct and the ALJ and the Designee needed to take an oath of office, he has not alleged that an administrative law judge who had taken the appropriate oath could not oversee the same proceedings to which he now objects. Moreover, Mr. Patterson's oaths of office claim is not jurisdictional as to this court because, regardless of the outcome, this court's jurisdiction sounds in the Uniform Administrative Procedure Act's provision allowing for review of a chancery court's review of decisions made by administrative officials. *See* Tenn. Code Ann. § 4-5-323(a) ("An aggrieved party may obtain a review of any judgment of the chancery court under this chapter by appeal to the court of appeals of Tennessee."). Accordingly, this court has subject matter jurisdiction over Mr. Patterson's appeal.

Having taken the step before the threshold, we turn to Mr. Patterson's threshold contention regarding the failure of the ALJ and Designee to take a judicial oath of office. Mr. Patterson makes both constitutional and statutory arguments that the ALJ and the Designee were required to swear an oath of office prior to hearing his case. The Chancery Court rejected both arguments. We evaluate the Chancery Court's determination as to these questions of law de novo with no presumption of correctness. *See Fair v. Cochran*, 418 S.W.3d 542, 544 (Tenn. 2013); *State v. Burns*, 205 S.W.3d 412, 414 (Tenn. 2006).

A.

Turning first to Mr. Patterson's constitutional argument, he contends that the ALJ and the Designee are required to take an oath under Article X, Section 1 of the Tennessee Constitution.[3] That provision of the Tennessee Constitution provides as follows:

---

[3] On appeal before this court, Mr. Patterson also endeavors to add constitutional arguments under the federal constitution in this appeal. In these thinly developed arguments, Mr. Patterson asserts violations resulting from the ALJ and Designee failing to take a judicial oath under Article VI, Clause 3 of the United States Constitution and the due process guarantees of the Fifth and Fourteenth Amendments.

In terms of procedure before the Chancery Court, Mr. Patterson moved in October 2018 for leave to amend his "Count I Oath Claims" but failed to notice the motion until May 2019. The trial court granted his motion for leave to amend, and Mr. Patterson filed his *Third Amended Petition*, but this amendment did not actually amend Count I as Mr. Patterson had sought permission to do and instead amended Count XVIII regarding seizure for forfeiture under the Drug Control Act. The Department moved to strike, and Mr. Patterson failed to respond to the Department's motion. The trial court granted the motion to strike.

Mr. Patterson, who fails to cite to the record in addressing this matter, contends that the Chancery Court erred in dismissing his federal constitutional arguments in violation of Tennessee Rule of Civil Procedure 8.06. He does not explain how this is so other than noting a requirement to do "substantial justice" under Rule 8.06. Mr. Patterson's argument that the Chancery Court erred in failing to consider his

Every person who shall be chosen or appointed to any office of trust or profit under this Constitution, or any law made in pursuance thereof, shall, before entering on the duties thereof, take an oath to support the Constitution of this State, and of the United States, and an oath of office.

Tenn. Const. art. X, § 1. This constitutional provision only applies to individuals holding an "office of trust or profit." *Moncier v. Bd. of Prof'l Responsibility*, 406 S.W.3d 139, 158 (Tenn. 2013). The Department concedes that the ALJ and the Designee are government employees but argues that they do not hold an office of trust or profit as the Tennessee Supreme Court has interpreted that term. The phrase "office of trust or profit" is defined neither in the Tennessee Constitution nor by statute. The Tennessee Supreme Court, however, has explored this term, and we turn to the jurisprudence of the State's high court in considering Mr. Paterson's contention.

Offices of trust or profit may be created by a provision of the Tennessee Constitution or by a legislative enactment. *Moncier*, 406 S.W.3d at 158 (citing *State ex rel. Harris v. Buck*, 196 S.W. 142, 143 (Tenn. 1917)). Mr. Patterson acknowledges that administrative law judges and the Commissioner's Designee are creatures of statute and not the Tennessee Constitution. Regarding an "office of trust or profit," when its genesis is in a statute rather than the Constitution, the touchstone as to whether a statute creates an office of trust or profit rather than mere government employment is the intent of the legislature as expressed in the plain language of the statute. *See Buck*, 196 S.W. at 143- 44 (explaining legislative "intent to create a county office" and "indication of the legislative purpose to create a public county office" determines whether the legislation at issue created an office of trust or profit or, on the other hand, mere employment).

The best evidence of the legislative intent to create a public office is an express declaration of that intent in the plain language of the statute. *Buck*, 196 S.W. at 143 (reasoning that "absence of an expression of the intent [to create a county office] is strong evidence that it did not exist"). In the absence of an express declaration of intent, legislative intent to create an office of trust or profit may be gleaned when the statute sets out certain "usual characteristics" of public offices, including a fixed term of duration, prescribed compensation, delineation of rights and duties, and a mandatory rather than permissive appointment. *Buck*, 196 S.W. at 144. That the duties of the position are of a type that could be done by a public official is not dispositive. *See Buck*, 196 S.W. at 143-44 (explaining that "it may be conceded that the duties assigned are such as might have been

federal constitutional arguments, which evidently were never properly put before the Chancery Court, cannot advance without this court lawyering for him. That is simply not our role. We find these arguments to be waived. *See Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her....").

confided to a public officer; yet they were also such as could be well discharged by a mere employé; either was but an agency for the public good, and it was for the Legislature to adopt the one or the other as it thought best"); *Prescott v. Duncan*, 148 S.W. 229, 239 (Tenn. 1912) (explaining that performance of "public duties" is not enough to create a public office as opposed to mere employment). When the position at issue is a "mere appointee[] and subordinate[]" to a public official and works at the discretion of such official, it is evidence that the position is mere employment rather than a position of trust or profit. *See Buck*, 196 S.W. at 144 (citing *Prescott*, 148 S.W. at 239) (where board of commissioners was authorized by legislation to appoint various officers to subordinate positions, the Tennessee Supreme Court held the created positions were mere "subordinates" of the board and therefore the legislation did not create a "county office" but "employe[e]s merely")

An examination of the statutes and regulations that address Administrative Procedures Division (APD) administrative judges and hearing officers and Commissioners Designees[4] reveals no legislative intent to create an office of trust or profit. The Administrative Procedures Act authorizes the APD to establish "a pool of administrative judges and hearing officers, who shall be learned in the law." Tenn. Code Ann. § 4-5-321(a)(2). The same Act also defines the terms "administrative judge" and "hearing officer." "'Administrative judge' means an agency member, agency employee or employee or official of the office of the secretary of state, licensed to practice law and authorized by law to conduct contested case proceedings pursuant to § 4-5-301." Tenn. Code Ann. § 4-5-102(1). "'Hearing officer' means an agency member, agency employee or employee or official of the office of the secretary of state, not licensed to practice law, and authorized by law to conduct a contested case proceeding pursuant to § 4-5-301." Tenn. Code Ann. § 4-5-102(4); *see also* Tenn. Comp. R. & Regs. 1360-04-01-.02(1) ("The

---

[4] Although regulations pertaining to other executive departments define the term "Commissioner's Designee," the regulations pertaining to the Department of Safety do not explicitly do so. *See e.g.* Tenn. Comp. R. & Reg. 1240-05-02-.01(m)(1) (defining "Commissioner's Designee" as "a person who is licensed to practice law and is designated by the Commissioner to review appeals of initial orders and to enter final orders pursuant to T.C.A. § 4-5-315, or to review petitions for a stay or reconsideration of final orders. A Commissioner's Designee may also be a hearing official who is an impartial official of the Department of Human Services or the Secretary of State Administrative Procedures Division who is designated by the Commissioner to conduct contested case administrative hearing proceedings."); Tenn. Comp. R. & Regs. 0465-03-.05(l) (defining "Commissioner's Designee" as "a person authorized by the commissioner to review Initial Orders issued by administrative judges of the APD and to enter Final Orders pursuant to T.C.A. § 4-5-315. Reviewing officials of the OAA are also designees of the commissioner."). It is clear from the record, however, that in this case the Commissioner's Designee who heard the appeal from the final order was an employee in the Appeals Division of the Department of Safety. *See* Tenn. Comp. R. & Regs. 1340-02-02-.21(1) ("The Appeals Division is designated by the Commissioner to administer contested case matters that involve the Commissioner, including but not limited to, final orders, Interlocutory Appeals, Petitions for Reconsideration of a Commissioner's Order, Petitions for a Stay, Appeals of an Initial Order, and Notices of Review of an Initial Order.").

term 'administrative judge' shall be defined in the same manner as defined by T.C.A. § 4-5-102(1).").

> The Department of Safety regulations[5] define "Administrative Judge" as
>
> An employee or official of the administrative procedures division of the office of the secretary of state or the department licensed to practice law and authorized by the commissioner to conduct contested case proceedings. Wherever the term "administrative judge" is used in these rules, it is intended to include reference to the term "hearing officer" or "commissioner," in cases in which a hearing officer or commissioner conducts the proceedings. For purposes of these rules, a hearing officer is an employee or official of the office of the secretary of state or the department, not licensed to practice law, and authorized by the commissioner to conduct a contested case proceeding.

Tenn. Comp. R. & Regs. 1340-02-02-.02(2). The Administrative Procedures Act also sets out procedures for contested case hearings and delineates the role of the administrative judge or hearing officer in the hearing: "It is the duty of the administrative judge or hearing officer to preside at the hearing, rule on questions of the admissibility of evidence, swear witnesses, advise the agency members as to the law of the case, and ensure that the proceedings are carried out in accordance with this chapter, other applicable law and the rules of the respective agency." Tenn. Code Ann. § 4-5-301(b).

Title 40, Chapter 33, Part 2 of the Tennessee Code, which addresses forfeiture procedures, sets out the powers of the administrative law judge presiding over contested case hearings in forfeiture proceedings: "the administrative law judge is empowered to subpoena witnesses and compel their attendance and to produce records, memoranda, papers and other documents at any hearing authorized by this part." Tenn. Code Ann. §40-33-209(b); *see also* Tenn. Code. Ann. §40-33-209(d) ("All hearings conducted pursuant to this part shall be contested case hearings and shall be conducted pursuant to the Uniform Administrative Procedures Act, compiled in title 4, chapter 5.").

Title 53, Chapter 11, Part 2 of the Tennessee Code, which addresses the seizure of contraband in relation to narcotic and drug control, sets out the role of a hearing officer when a claimant requests a hearing on the property seized as contraband:

> (h)(1) The commissioner, in the commissioner's discretion, is authorized to

---

[5] Department of Safety regulation 1340-02-01-.01 indicates "The Uniform Rules of Procedures for Hearing Contested Cases Before State Administrative Agencies, Rule 1360-04-01, promulgated by the Tennessee Secretary of State are hereby adopted by the Tennessee Department of Safety to be used in the hearing of contested cases other than Rule 1340-02-02, Rules of Procedure for Asset Forfeiture Hearings." Tenn. Comp. R. & Reg. 1340-02-01-.01.

appoint or designate a hearing officer to sit, and set the case on the docket, as the hearing officer at the request and in the absence of the commissioner for the purpose of conducting a hearing as the commissioner may deem necessary.

(2) The hearing officer designated by the commissioner shall make findings of fact, conclusions of law, and recommendations for the issuance of the proposed order based on the findings, conclusions and recommendations.

(3) If the commissioner concurs, the commissioner shall issue the order, or the commissioner may, upon review of the record, make findings, conclusions, and issue an order that in the commissioner's discretion, the record justifies.

(4) The commissioner, personally, may hold hearings that the commissioner deems proper.

(5) The hearing officer is likewise empowered to subpoena witnesses and compel their attendance and the production of records, memoranda, papers and other documents at any hearing authorized under this section.

…

(j) The commissioner may make or publish other and further procedural rules and regulations, not inconsistent with this section, that the commissioner deems proper, governing any hearing provided for in this section.

(k) If a law enforcement agency seizes a motor vehicle as the result of a violation of the drug control law, the agency may elect whether to go forward with the forfeiture proceeding through either an administrative agency or through a court having civil jurisdiction in the county where the seizure occurred.

Tenn. Code Ann. § 53-11-201(h)(1)-(4), (j), (k).[6]

The Department of Safety's regulations address the role of the Appeals Division, in which the Commissioner's Designee is employed:

(1) The Appeals Division is designated by the Commissioner to administer contested case matters that involve the Commissioner, including but not limited to, final orders, Interlocutory Appeals, Petitions for Reconsideration of a Commissioner's Order, Petitions for a Stay, Appeals of an Initial Order, and Notices of Review of an Initial Order. The original of all appellate

---

[6] Although the contested case hearing was before an administrative law judge rather than a hearing officer, the parties address the hearing officer statutory provisions and regulations, and it is clear that the functions of each are overlapping. *See* Tenn. Code Ann. § 4-5-301(b). Accordingly, these statutes and regulations are relevant in considering the matters before this court in the present case.

- 11 -

matters must be filed with the Appellate Division, with service to the Legal Division and to the appropriate party.

…

(4) The Appeals Division may advise the commissioner on appellate matters in accordance with T.C.A. § 4-5-304. By filing a delegation order in a specific case, the commissioner may delegate to the Appeals Division the authority to enter a final administrative order. Any delegation order must be served upon all parties. The commissioner may file a blanket order delegating to the Appeals Division the authority to enter a final administrative order on all settlements per Rule 1340-02-02-.09(1)(b) and administrative forfeitures. Every order entered by the Appeals Division shall recite the authority under which it is entered.

Tenn. Comp. R. & Reg. 1340-02-02-.21.

Viewing this statutory and regulatory law in light of Tennessee Supreme Court precedent explaining the contours of the term "office of trust or profit," as contrasted with "mere employment," the positions at issue here simply do not fall within the "office of trust or profit" category. First, none of the statutory provisions nor administrative regulations noted above contain an express declaration of intent to create a public office for either the ALJ or the Designee, and the Appellant has pointed the court in his briefing to no other relevant statutory or regulatory provisions that contain such an express declaration. While the absence of an express declaration of intent to create a public office is not dispositive on the issue of whether the ALJ and Designee hold offices of trust or profit, it is, as indicated by the Tennessee Supreme Court, "strong evidence" that the legislature had no such intent for these positions. *See Buck*, 196 S.W. at 143. In other words, where the legislature has not declared the position to be an office of trust or profit, the challenger seeking to establish it as such is pushing uphill against headwinds.

With no express declaration of intent, evidence of such intent must be found in looking to whether the relevant statutory provisions set out the "usual characteristics" of public offices, including a fixed term of duration, prescribed compensation, delineation of rights and duties, and mandatory rather than permissive appointment. *See id.* at 143-44. The statutory and regulatory provisions here indicate no fixed term of duration or prescribed compensation for administrative law judges or the Designee.

In terms of a "delineation of right and duties," in explaining the role of administrative judges and hearing officers, the statutory language does indicate that such judge or officer has certain duties to carry out: "It is the duty of the administrative judge or hearing officer to preside at the hearing, rule on questions of the admissibility of evidence, swear witnesses, advise the agency members as to the law of the case, and ensure that the proceedings are carried out in accordance with this chapter, other applicable law and the

- 12 -

rules of the respective agency." Tenn. Code Ann. § 4-5-301(b). And elsewhere this role is described in terms of an empowerment to carry out certain tasks: "[t]he administrative law judge is empowered to subpoena witnesses and compel their attendance and to produce records, memoranda, papers and other documents at any hearing authorized by this part." Tenn. Code Ann. § 40-33-209(b). Pertaining to the Designee from the Appeals Division, the regulations indicate "The Appeals Division is designated by the Commissioner to administer contested case matters" and to "advise the Commissioner on appellate matters." Tenn. Comp. R & Regs. 1340-02-02-.21(1), (4).

However, it is clear from the statutory language that the use of administrative law judges and hearing officers is at the discretion of the Commissioner rather than mandatory in nature. *See* Tenn. Code Ann. § 53-11-201(h)(1) ("The commissioner, in the commissioner's discretion, is authorized to appoint or designate a hearing officer to sit, and set the case on the docket, as the hearing officer at the request and in the absence of the commissioner for the purpose of conducting the hearing as the commissioner may deem necessary."). The Commissioner may choose to personally hold a contested hearing rather than appoint a hearing officer. Tenn. Code Ann. §53-11-201(h)(4). When an administrative law judge or hearing officer does preside over a hearing, any findings of fact, conclusions of law, or orders are simply recommendations to the Commissioner, who is free to adopt such recommendations or make independent determinations and orders. Tenn. Code Ann. § 53-11-201(h)(2), (3); Tenn. Comp. R. & Regs. 1340-02-02-.23(3) ("All orders, procedural or otherwise, by an administrative judge shall be reviewable by the commissioner, in accord with these rules."). This wide discretion on the part of the Commissioner over the administrative law judges' and hearing officers' execution of their duties strongly suggests that such roles are that of subordinates and "mere employment" rather than public office.

In *Buck*, the Tennessee General Assembly had by statute "empowered" a county "to appoint a county engineer, who shall be an experienced civil engineer who has had experience in highway construction"[7] and prescribed through the same legislative act "the duties of said engineer," which were "largely supervisory in character, looking to the construction and keeping in repair of the public roads in the county of all classes." *Buck*, 196 S.W. at 142. Nevertheless, the Tennessee Supreme Court concluded that was insufficient to even constitute fixing of "the duties of the office," much less enough to render the position one of public trust or profit. *Id*. at 144.

To the extent that Appellant's argument rests on the similarity between the role an administrative law judge or Designee plays in contested case hearings and the role of a judge who is in an office of trust or profit, this similarity is a thin reed. As the Tennessee

---

[7] The original statutory language referenced above was adopted in 1906. *Buck*, 196 S.W. at 142. In 1909, the General Assembly used the language "to appoint a county engineer, who shall be an experienced civil engineer who has had experience in highway construction." *Id*. at 143.

Supreme Court has explained, "it may be conceded that the duties assigned are such as might have been confided to a public officer; yet they were also such as could be well discharged by a mere employe[e]." *See Buck*, 196 S.W. at 143-44; *see also Prescott*, 148 S.W. at 239 (explaining that performance of "public duties" is not enough to create a public office as opposed to mere employment).

Finally, to the extent Mr. Patterson's argument relies on the meaning of "profit," he is correct that the ALJ and the Designee "profit" in the colloquial sense by receiving state paychecks, but that is generally true of every governmental employee. The logical extreme of Mr. Patterson's argument, i.e., every government employee who profits in some way from the holding of a government position qualifies as a holder of an office of trust or profit within the meaning of the Tennessee Constitution, has been repeatedly rejected by the Tennessee Supreme Court. *See Moncier*, 406 S.W.3d at 158; *Prescott*, 148 S.W. at 239.

Ultimately, in the absence of a legislative declaration, the Tennessee Supreme Court has indicated that where the General Assembly intends to a create an office of public trust or profit, that "the General Assembly by its own act would, at least, have fixed the tenure, the duration, the fees or emoluments, the rights and powers, as well as the duties of the office." *Buck*, 196 S.W. at 144. The General Assembly did not do so in *Buck* nor has it done so in the present case. Simply stated, Mr. Patterson's arguments are ultimately unpersuasive that the Tennessee General Assembly intended to create in the administrative law judges and Designees a position of trust or profit in accordance with the Tennessee Constitution. Therefore, we conclude that Mr. Patterson has not met his burden of establishing that Article X, Section 1 of the Tennessee Constitution obligated the ALJ and the Designee to swear any particular oath of office prior to hearing his case.

B.

Turning to Mr. Patterson's statutory arguments, he relies upon two statutory provisions in support of his contention that, independent of any constitutional oath requirement, the General Assembly has imposed an oath requirement upon the ALJ and Designee. Mr. Patterson points first to Tennessee Code Annotated section 8-18-112, which provides:

> Whenever any officer is authorized or required to appoint a deputy, such deputy, before proceeding to act, shall take the constitutional oaths and oath of office, which shall be accompanied by the same certificate, filed in the same office, and with the same endorsement, as the oaths of such deputy's principal. This section does not apply to deputies who may be employed in particular cases only.

Tenn. Code Ann. § 8-18-112. Regarding this statutory section, Mr. Patterson's argument is that the ALJ and Designee are "deputies" of the Commissioner of Safety, and thus this

- 14 -

statutory provision requires they take an oath of office.

Mr. Patterson's argument, however, ignores other related statutory provisions. When the statutory context is taken into account, it is clear that neither the ALJ nor the Designee are "deputies" for purposes of Tennessee Code Annotated section 8-18-112.

First, nowhere in the statutory scheme are administrative law judges or Designees defined as deputies. There is no express definition of "deputy" in Title 8, which is entitled "Public Officers and Employees." Chapter 20 of Title 8, which is entitled "Appointment of Deputies and Assistants," however, addresses the appointment of "deputies":

> (a) Where any one (1) of the clerks and masters of the chancery courts, the county clerks and the clerks of the probate, criminal, circuit and special courts, county trustees, registers of deeds, and sheriffs cannot properly and efficiently conduct the affairs and transact the business of such person's office by devoting such person's entire working time thereto, such person may employ such *deputies* and assistants as may be actually necessary to the proper conducting of such person's office in the following manner and under the following conditions, namely:
> (1) The clerks of the circuit, criminal, and special courts may make application to the judge, or any one (1) of the judges, of their respective courts, in term time or at chambers, by petition duly sworn to, setting forth the facts showing the necessity for a *deputy or deputies* or assistants, the number required and setting forth the salary that should be paid each;
> (2) The sheriff may in like manner make application to the judge of the circuit court in the sheriff's county, for *deputies* and assistants, showing the necessity therefor, the number required and the salary that should be paid each; provided, that in the counties where criminal courts are established, the sheriff may apply to a judge of such criminal court; and
> (3) The clerks and masters of the chancery courts, county trustees, county clerks and clerks of the probate courts, and registers of deeds may make application to the chancellor, or to one (1) of the chancellors, if there be more than one (1), holding court in their county by sworn petition as above set forth, showing the necessity for a *deputy or deputies* or assistants, the number required and the salary each should be paid.

Tenn. Code Ann. § 8-20-101 (emphasis added).

Beyond Chapter 20, there are, under Title 8, additional statutory provisions that either expressly confer a power to appoint a deputy or reference a status as a deputy. *See, e.g.,* Tenn. Code Ann. § 8-12-104 ("The county surveyor has the power to appoint as many as two (2) deputies, with all the powers, rights, and duties of the surveyor, who shall hold office for and during the term of the surveyor appointing them, unless sooner removed by

- 15 -

the surveyor, or otherwise removed according to law, and their official acts shall have the same force and effect as the acts of the surveyor."); Tenn. Code Ann. § 8-11-111 ("If the office of the trustee becomes vacant due to death, resignation or removal, the duties of the trustee shall be temporarily discharged by the chief deputy, or deputy designated as temporary successor by the trustee in writing, until a successor trustee is elected or appointed and qualified according to law."); Tenn. Code Ann. § 8-10-117 ("A judge may, in writing, specially depute any discreet person of full age, not being a party to the suit pending, to perform any particular duty devolving by law upon a constable, if no constable is at hand, and the business urgent . . . The person thus deputized is vested with all the powers of a constable for the occasion, and is subject to the same obligations and penalties."); Tenn. Code Ann. § 8-48-111 ("This section shall be applicable to officers of political subdivisions, including, but not limited to, cities, towns, villages, townships and counties, as well as school, fire, power and drainage districts, not included in § 8-48-110. Such officers, subject to such regulations as the executive head of the political subdivision may issue, shall designate by title (if feasible) or by named person, emergency interim successors and specify their order of succession. The officer shall review and revise, as necessary, designations made pursuant to this section to ensure their current status. The officer will designate a sufficient number of persons so that there will be not less than three (3), nor more than seven (7), deputies or emergency interim successors or any combination thereof, at any time. In the event that any officer of any political subdivision, or the officer's deputy provided for pursuant to law, is unavailable, the powers of the office shall be exercised and duties shall be discharged by the officer's designated emergency interim successors in the order specified. The emergency interim successors shall exercise the powers and discharge the duties of the office to which designated until such time as a vacancy which may exist shall be filled in accordance with the constitution or statutes, or until the officer, or the officer's deputy or a preceding emergency interim successor, again becomes available to exercise the powers and discharge the duties of office."); Tenn. Code Ann. § 8-9-105 ("Coroners have the power to appoint one (1) or more deputies, and to require them to give bond, with security, to save their respective principals harmless, and for the faithful discharge of their duties."); Tenn. Code Ann. § 8-14-305 ("The executive director shall, subject to the approval of the duly elected officers of the district public defenders conference, appoint a deputy executive director, a budget officer and a director and such other assistants and clerical personnel as are necessary to enable the performance of the duties of the office."); Tenn. Code Ann. § 8-7-401(a) ("A victim of crime or the family members of a victim of crime may employ private legal counsel to act as co-counsel with the district attorney general or the district attorney general's deputies in trying cases, with the extent of participation of such privately employed counsel being at the discretion of the district attorney general. The district attorney general or a deputy shall make the final and concluding argument. The privately retained counsel shall immediately inform the district attorney general of such counsel's employment."); Tenn. Code Ann. § 8-23-105 ("The salaries of the clerk of the supreme court, the chief deputy clerks of the supreme court and their respective staffs shall be fixed by the chief justice of the supreme court in consultation with the administrative director of the courts and in accordance with

administrative guidelines and policies."); Tenn. Code Ann. § 8-30-202 (indicating "(a) The following positions shall be executive service positions: . . . (2) Any deputy commissioner or equivalent authority in each department or state agency . . . .").

The General Assembly has specifically identified deputies in connection with a variety of positions from sheriffs to coroners to deputy commissioners in Title 8. Despite the highly specific nature of these references, not a single one of these references includes administrative law judges or Designees. "[S]tatutes should not be interpreted in isolation. The overall statutory framework must be considered, and '[s]tatutes that relate to the same subject matter or have a common purpose must be read *in pari materia* so as to give the intended effect to both.'" *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 846 (Tenn. 2019) (quoting *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015)); *see also Cohen v. Cohen*, 937 S.W.2d 823, 827 (Tenn. 1996) ("We must consider statutes in pari materia, not in a vacuum."). Reading the statutory provisions *in pari materia*[8] suggests that "deputy," as used in the oath provision of chapter 18 of Title 8, refers to the deputies that are provided for in Title 8. Thus, the ALJ and Designee appear to not constitute deputies for purposes of the oath provision under Title 8.

Also in this same vein, there is no Tennessee case law applying the oath requirement outside of deputies identified Title 8. *See State v. Slagle*, 89 S.W.326 (Tenn. 1905) (deputy sheriff); *Clark v. State*, 67 Tenn. 591, 594 (Tenn. 1876) (deputy sheriff); *Farmers and Merchants' Bank v. Chester*, 25 Tenn. 458, 459 (Tenn. 1846) (deputy county clerk); *see also Minick v. Metro. Gov't of Nashville and Davidson Cnty.*, No. 3:12-cv-0524, 2015 WL 796667, at *1 (M.D. Tenn. Feb. 25, 2015) (discussing differences between deputy sheriffs and jailers, including the necessity of the oath requirement);*United States v. Bolton*, No. 3:12-CR-101-14-TAV-CCS, 2014 WL 129264, at *8-10 (E.D. Tenn. Jan. 14, 2014) (examining oaths of a sheriff, deputy sheriff, and special deputy United States Marshal); *United States v. O'Neal*, No. 3:08-CR-107, 2013 WL 1089876, at *1-3 (E.D. Tenn. Mar. 15, 2013) (law enforcement officer).

Furthermore, the language, addressed above, authorizing the utilization by the Commissioner of ALJs and Designees does not refer to them as deputies. Mr. Patterson has pointed to no provision of Tennessee statutory law that designates or refers to them as such. Rather, he points the court to a general definition of "deputy" from the Sixth Edition of Black's Law Dictionary:

> A substitute; a person duty authorized by an officer to exercise some or all of the functions pertaining to the office, in the place and stead of the latter. One appointed to substitute for another with power to act for him in his name or behalf. A substitute for another and is empowered to act for him in his name and behalf in all matters in which principal may act.

---

[8] *See* Scalia & Garner, Reading Law: The Interpretation of Legal Texts, 252.

*Deputy*, Black's Law Dictionary (6th ed. 1991).

The Department of Safety argues that the ALJ and hearing officer do not fit within even this broad definition of "deputy." The Appellee reasons that because the ALJ does not work directly for the Commissioner and is not appointed by him to the ALJ position, and because of the discretion retained by the Commissioner to review and override both the ALJ's and Designee's work, these positions are not that of a "substitute" with power to "act for him."

Given the specific language in Title 8 addressing deputies, we need not decide whether the ALJ and hearing officer would fit within a more general understanding of the term "deputy."[9] The oath requirement imposed by Title 8 Chapter 18 does not extend beyond persons who are deputies under Title 8, which administrative law judges and Designees are not.

Mr. Patterson points to a second statutory provision that he argues requires the ALJ and hearing officer to swear an oath of office: Tennessee Code Annotated section 17-1-104. This provision requires an oath for "every judge and chancellor in this state":

> Before entering upon the duties of office, every judge and chancellor in this state is required to take an oath or affirmation to support the constitutions of the United States and that of this state, and to administer justice without respect of persons, and impartially to discharge all the duties incumbent on a judge or chancellor, to the best of the judge's or chancellor's skill and ability. The oath shall be administered in accordance with title 8 or any other

---

[9] The Department of Safety also argues in the alternative that even if the ALJ and Designee were "deputies" for purpose of the oath provision of § 8-18-112, the caveat that the "section does not apply to deputies who may be employed in particular cases only" would nonetheless exempt the ALJ and Designee from the provision's reach. The Department points to the statutory provisions that establish the Commissioner's discretion to employ an ALJ from the pool established by the Secretary of State on a case-by-case basis. *See* Tenn. Code Ann. § 4-5-321(a)(2) (authorizing the APD to establish "a pool of administrative judges and hearing officers, who shall be learned in the law"); Tenn. Code Ann. § 40-33-209(a) ("The administrative head of the applicable agency shall contract with the secretary of state for use of administrative law judges to conduct forfeiture hearings."); Tenn. Code Ann. § 53-11-201(h)(1) ("The commissioner, in the commissioner's discretion, is authorized to appoint or designate a hearing officer to sit, and set the case on the docket, as the hearing officer at the request and in the absence of the commissioner for the purpose of conducting a hearing as the commissioner may deem necessary."); *see also* Tenn. Comp. R. & Reg. 1340-02-02-.21(4) ("By filing a delegation order in a specific case, the commissioner may delegate to the Appeals Division the authority to enter a final administrative order... . The commissioner may file a blanket order delegating to the Appeals Division the authority to enter a final administrative order on all settlements...."). Because the plain language of the statutory scheme, when read *in pari materia*, shows the term "deputies" does not apply to the ALJ and Designee here, we need not decide this issue.

applicable law.

Tenn. Code Ann. § 17-1-104.

Mr. Patterson argues that "judge" in this provision encompasses administrative law judges, and in support of this contention, points to Tennessee Supreme Court Rule 10: "A judge, within the meaning of this Code, is anyone who is authorized to perform judicial functions, including but not limited to an officer such as a magistrate, referee, court commissioner, judicial commissioner, special master, or an administrative judge or hearing officer." Tenn. Sup. Ct. R. 10, Application I(B). There are multiple problems with this contention. One, "this Code" that is being referenced in Tennessee Supreme Court Rule 10 is the Code of Judicial Conduct, not the Tennessee Code upon which he relies for his statutory oath argument. Two, applying the Code of Judicial Conduct to administrative law judges arises from a decision of the Tennessee Secretary of State. The Tennessee Supreme Court has expressly noted in addressing the applicability of the Code of Judicial Conduct that "[t]he Secretary of State, in accordance with Tennessee Code Annotated section 4-5-321(b), adopted a code of conduct for all administrative judges and hearing officers." Tenn. Sup. Ct. R. 10, Application I, Cmt. 4. The referenced regulation provides as follows:

> Unless otherwise provided by law or clearly inapplicable in context, the Tennessee Code of Judicial Conduct, Rule 10, Canons 1 through 4, of the Rules of the Tennessee Supreme Court, and any subsequent amendments thereto, shall apply to all administrative judges and hearing officers of the State of Tennessee. However, any complaints regarding any individual administrative judge's or hearing officer's conduct under the code shall be made to the Director of the Administrative Procedures Division or hearing officer or other comparable entity with supervisory authority over the administrative judge or hearing officer, and any complaints about such supervising authority shall be made to the appointing authority.

Tenn. Comp. R. & Regs. 1360-04-01-.20

Three, and most importantly, Mr. Patterson's argument simply ignores the statutory context of Tennessee Code Annotated section 17-1-104. Title 17 is entitled "Judges and Chancellors" and Chapter One in which the oath requirement appears is entitled "General Provisions." The sections in this chapter delineate various requirements for the "judges and chancellors" such as age, domicile, and method of election, and enumerate certain miscellaneous duties and powers such as the "authoriz[ation] to solemnize the rites of matrimony." Tenn. Code Ann. § 17-1-206. The categories of judges specifically listed in the chapter are: "judges of the supreme court, court of appeals, court of criminal appeals, chancery courts, circuit courts, criminal courts, and courts exercising the jurisdiction imposed in one (1) or more of the chancery courts, circuit courts, or criminal courts." Tenn.

Code Ann. § 17-1-106(a). Article VI of the Tennessee Constitution is referred to specifically in section 106: "In addition to the qualifications provided for judges by the Constitution of Tennessee, Article VI, §§ 3 and 4, judges of the supreme court, court of appeals, court of criminal appeals, chancery courts, circuit courts, criminal courts, and courts exercising the jurisdiction imposed in one (1) or more of the chancery courts, circuit courts, or criminal courts shall be learned in the law . . . ." Tenn. Code Ann. § 17-1-106(a). Nowhere in this chapter are administrative law judges mentioned. There is no suggestion that administrative law judges would be subject to the various other requirements in chapter 1 of Title 17, nor the various powers such as the power to solemnize marriage. The only reference in all of Title 17 to "administrative law judges" is the express indication that they are not subject to the Board of Judicial Conduct. Tenn. Code Ann. § 17-5-102(b). In short, the statutory context of Tenn. Code Ann. § 17-1-104 clearly indicates Title 17 pertains to judges of the Tennessee Judiciary created under Article VI of the Tennessee Constitution[10] and not to administrative judges employed by the Tennessee Secretary of State performing work for a Department of the Executive Branch.

Furthermore, where the Tennessee General Assembly concludes an oath requirement is necessary, it has repeatedly and expressly imposed this requirement in no uncertain terms. For example, the Tennessee legislature has explicitly required judges of the Workers' Compensation Court to take an oath. Tenn. Code Ann. § 50-6-238(e) ("Any person appointed to serve as a workers' compensation judge or as the chief judge shall be required to take an oath or affirmation to support the constitutions of the United States and of this state, and to administer justice without respect of persons, and impartially to discharge all the duties incumbent upon a judge to the best of the judge's skill and ability."). The legislature has also explicitly required a host of other positions to take an oath, including sheriffs, coroners, constables, county trustees, surveyors, registers, and notaries public. *See* Tenn. Code Ann. §§ 8-8-103, -104 (sheriffs); § 8-9-104 (coroners); §§ 8-10-106, -108 (constable); § 8-11-102 (county trustees); § 8-12-102 (surveyors); § 8-13-102 (registers); § 8-16-105 (notaries public). This suggests that if the legislature intended an oath requirement for administrative law judges, the legislature would have done so explicitly by statute.

Indeed, in many of the states where administrative law judges are required to take an oath of office, the oath requirement is specifically imposed by statute. *See e.g.* Conn. Gen. Stat. Ann. § 31-276(e) ("Each administrative law judge [on the Workers' Compensation Commission] shall be sworn to a faithful performance of his duties….");

---

[10] One section of the Title, 17-2-107, pertains to general sessions judges. Although general sessions judges are not explicitly listed in the oath provision of 17-1-104, they are Article VI judges. *Franks v. State*, 772 S.W.2d 428, 429 (Tenn. 1989) ("General sessions courts are inferior courts within the meaning of Article VI, Section 7 of our State Constitution." (citing *Durham v. Dismukes,* 206 Tenn. 448, 333 S.W.2d 935 (1960))).

Idaho Code Ann. § 67-5283(1)(b) ("The chief administrative hearing officer and hearing officers appointed by the chief administrative hearing officer shall: … Take the oath of office as prescribed in chapter 4, title 59, Idaho Code"); 35 Ill. Comp. Stat. Ann. 1010/1-30 (b) ("Before entering upon the duties of office, each administrative law judge [of the Tax Tribunal] shall take and subscribe to an oath or affirmation that he or she will faithfully discharge the duties of the office, and such oath shall be filed in the office of the Secretary of State."); *see also* Ga. Comp. R. & Regs. 616-1-1-.07 ("Judges of the Administrative Court shall take the oath prescribed for judges of the Georgia superior courts.").

That it may be prudent or good policy to have administrative law judges or Designees take an oath in connection with the performance of their jobs does not mean it is constitutionally or statutorily required that they do so. We simply find no basis for concluding that the Tennessee Constitution imposes or the Tennessee General Assembly has statutorily imposed an oath requirement upon administrative law judges or Designees.

III.

Having resolved Mr. Patterson's threshold oath of office claim, we now move to the heart of this appeal: the defaulted status of Mr. Patterson's case. Mr. Patterson argues that the Commissioner's Designee erred in her Final Order affirming the ALJ's (1) Notice of Default and Initial Order and (2) Order Denying Petition to Reconsider Initial Order.

In *McEwen v. Tennessee Department of Safety*, this court explained that the Uniform Administrative Procedures Act creates a three-step process for courts to utilize in assessing the appropriateness of an administrative action. 173 S.W.3d 815, 820 (Tenn. Ct. App. 2005). First, the reviewing court must evaluate "whether the agency has identified the appropriate legal principles" to guide its decision-making. *Id.* Next, conventionally, the court should "examine the agency's factual findings to determine whether they are supported by substantial and material evidence." *Id.* However, the substantial and material evidence standard is modified for forfeiture proceedings and replaced instead with a "preponderance of the evidence standard." *Id*. (citing Tenn. Code Ann. § 40-33-213(a)). Finally, the reviewing court must scrutinize the agency's decision and ultimately decide whether the agency correctly "applied the law to the facts." *Id.* This framework tasks a reviewing court with addressing "mixed questions of law and fact." *Id.* Accordingly, "courts may neither reweigh the evidence nor substitute their judgment" for that of an agency "even if the evidence could support a conclusion different from the one reached." *Miller v. Civ. Serv. Comm'n of Metro. Gov't of Nashville and Davidson Cnty.*, 271 S.W.3d 659, 665 (Tenn. Ct. App. 2008). We will uphold a decision made by an agency where "a reasonable person could appropriately have reached the same conclusion . . . consistent with a proper application of the controlling legal principles." *Id.* (citing *McEwen*, 173 S.W.3d at 820). With that framework in mind,[11] we will address in turn both the

---

[11] We note the Chancery Court applied the *McEwen* framework. Mr. Patterson has not asserted on

appropriateness of the entry of default and the appropriateness of the decision not to set aside the default at Mr. Patterson's request.

A.

Mr. Patterson raises two objections to the ALJ's entry of default in this case. In addition to generally challenging whether the entry of default was appropriate under the circumstances, Mr. Patterson also contends that the ALJ erred by granting the Department's motion as it was "based solely on unsworn statements made by opposing counsel to 'balance the equities' in favor of [the Department]" and that the ALJ inappropriately declined to continue the case in his absence. The Department defends the ALJ's decision-making at every step of the *McEwen* analysis.

Starting with the first step of *McEwen*, we agree with the Department that the ALJ properly identified the relevant legal principles to guide its initial default inquiry. *See* 173 S.W.3d at 820. Those legal principles are outlined in the Rules of Civil Asset Forfeiture, which include the following guidance on when both a motion for default and an entry of default are appropriate:

> (1) Default. A motion for default may be in writing or oral.
>
> > (a) The failure of a party to attend or to participate in a prehearing conference, a party's non-attendance at a second setting of a hearing on the merits in a case or a party's non-attendance at another stage of contested case proceedings after notice thereof are each causes for holding such a party in default pursuant to T.C.A. § 4-5-309.
> >
> > . . .
> >
> > (c) In any situation set out in subparagraphs (a) and (b) of this Rule, a motion may be made to hold the absent party in default and to enter an initial default order or to continue on an uncontested basis.
> >
> > (d) No default shall be entered against a claimant for failure to attend except upon proof, that the Legal Division has given notice of the hearing per Rule 1340-02-02-.06(2)(e).

Tenn. Comp. R. & Regs. 1340-02-02-.17. Subsection (1)(d) notes that another rule outlines what evidence might be considered when determining whether "the Legal Division has given notice of the hearing" to the claimant. Tenn. Comp. R. & Regs. 1340-02-02-.17(1)(d). According to that corresponding rule, the Department may provide proper notice

---

appeal that it was error to do so, and the Department quite clearly applies that framework in its briefing.

to the claimant of a hearing date by relying upon "any method used by the United States Postal Service to inform its users of the date of delivery of certified mail."  *See* Tenn. Comp. R. & Regs. 1340-02-02-.06(2)(e).

Mr. Patterson has not suggested that these rules are irrelevant to his case or challenged these rules.  Rather, Mr. Patterson contends that the ALJ overlooked a different rule that, he argues, would have entitled him to a continuance under the circumstances.  *See* Tenn. Comp. R. & Regs. 1340-02-02-.12.  That rule states:

> (1) Notice of hearing for a second or subsequent setting of the hearing will be by certified mail, return receipt requested. Such notice may be proven as set forth in Rule 1340-02-02-.06(2).  Claimants and their attorneys shall have an affirmative duty to notify the Legal Division in writing of any change in address.

> (2) If rulings on preliminary motions at a hearing on the merits cause prejudice to a party who received inadequate notice of the motion prior to the date of the hearing, then a continuance shall be granted.

> (3) Any case may be continued by mutual consent of the parties.

> (4) A continuance shall be granted rather than a default or dismissal for failure to appear at the first setting of a case.

Tenn. Comp. R. & Regs. 1340-02-02-.12.

Relying primarily on subsection (4), Mr. Patterson contends that the Rules required the ALJ to continue his contested case hearing instead of granting an oral motion for default.  However, as the Department points out, this Rule is not relevant in situations where a contested case hearing has been reset on multiple occasions.  The resetting of the hearing implicates the former rule (Tenn. Comp. R. & Regs. 1340-02-02-.17), not the one cited by Mr. Patterson (Tenn. Comp. R. & Regs. 1340-02-02-.12).

It is clear from the record that the November 16, 2016 hearing at which Mr. Patterson failed to appear was at least a "second setting" of the hearing.  The contested case hearing was originally set for February 24, 2016, but Mr. Patterson's counsel asked to have that hearing rescheduled.  The contested case hearing was thereafter reset for April 27, 2016, then July 27, 2016, and ultimately for November 16, 2016.

In his brief, Mr. Patterson asserts that subsection (4) of Tenn. Comp. R. & Regs. 1340-02-02-.12 means that "defaults will not be taken until a Petitioner fails to appear at a hearing twice."  His argument, however, both adds a word that does not appear in the rules and omits a critical word that does appear.  He adds the word "twice," and he omits the

word "setting." Nowhere in either rule does it indicate that a party must miss a hearing "twice" for default to be appropriate. Instead, the rule provides that a continuance rather than default will be granted for a party's failure to appear at the "first setting of a case." In line with this, Tenn. Comp. R. & Regs. 1340-02-02-.17 indicates that default is appropriate for non-attendance at "a second setting of a case on the merits." Both statutes turn on the "setting" of the case. As discussed above, the November 16, 2016 hearing was undisputably at least a "second setting" of the case.

Finally, Mr. Patterson argues in his brief, without any citation or reference to the record, that the November 16, 2016 hearing "would have been Patterson's first hearing on the merits." However, the record appears to be clear that the first setting of the contested case hearing was February 24, 2016, and this hearing was moved at Mr. Patterson's counsel's request. Therefore, to the extent Mr. Patterson is arguing that the November 16, 2016 hearing would have been the "first setting" of the case on the merits, his argument is unavailing.

Moving now to the second *McEwen* step, the ALJ's factual findings are supported by the preponderance of the evidence. Here, the ALJ found that no one appeared for the claimant at the November 16, 2016 hearing and that the postal records reflected that the claimant was sent notice of the hearing by certified mail to the address of record of his attorney, and that notice was delivered and signed for on October 17, 2016. Mr. Patterson stresses that the facts provided to the ALJ regarding notice came in the form of "unsworn statements made by the attorney for TDOSHS," but the final order reflects that the ALJ had access to the physical return receipt itself, which is the kind of evidence relevant to demonstrating notice by proof of service. *See* Tenn. Comp. R. & Regs. 1340-02-02-.06(2)(e) (Notice may be proved by "any method used by the United States Postal Service to inform its users of the date of delivery of certified mail").

The final step of the *McEwen* analysis requires this court to assess whether the ALJ correctly applied Tennessee Compilation of Rules & Regulations 1340-02-02-.06(2)(e) and 1340-02-02-.17 to Mr. Patterson's case. *See* 173 S.W.3d at 820. We conclude that the ALJ did. The Department's oral motion for default was appropriate under the circumstances, as addressed above. *See* Tenn. Comp. R. & Regs. 1340-02-02-.17(1)(a). The ALJ's final order reflects that it considered the proof provided by the Department, including the return receipt, and also the representations by counsel that a copy was hand-delivered to Mr. Patterson's counsel's legal office. This showing was sufficient to establish proper notice of the reset hearing date, location, time, and subject matter. *See* Tenn. Comp. R. & Regs. 1340-02-02-.06(2)(e). Furthermore, the ALJ observed that Mr. Patterson and Mr. Moncier were, in fact, not present either in the room or in the lobby of the hearing location, and the ALJ concluded that an entry of default was appropriate. *See* Tenn. Comp. R. & Regs. 1340-02-02-.17(1)(a). We see no reason to disturb this straightforward, appropriate application of the Rules of Civil Asset Forfeiture to this circumstance.

- 24 -

B.

Mr. Patterson also objects to the ALJ's decision, and the Designee's affirmance of the decision, not to set aside the entry of default "for good cause shown." Not only does Mr. Patterson contest the overall result of these officials' decision-making processes, but he also claims that they overlooked what he contends was the correct procedure for weighing the setting aside of a default, as reflected in *Henry v. Goins*, 104 S.W.3d 475 (Tenn. 2003). Mr. Patterson argues that a faithful application of the standard relevant to Tennessee Rule of Civil Procedure 60 motions would have led the ALJ (and the Designee on review) to set aside the original entry of default.

We return now to the first step of the *McEwen* analysis: whether the ALJ, and the Designee, rely on the correct legal principles in determining that Mr. Patterson's default should not be set aside. *See* 173 S.W.3d at 820. Once again, the Rules of Civil Asset Forfeiture guided the reviewing officials' analyses. In addition to the language quoted above, Tenn. Comp. R. & Regs. 1340-02-02-.17 also outlines the procedure for setting aside the entry of default, stating:

> (f) The defaulting party, no later than ten (10) days after service of an order may file a motion for reconsideration under T.C.A. § 4-5-317, requesting that the default be set aside for good cause shown, and stating the grounds relied upon. The administrative judge may enter an order pursuant to T.C.A. § 4-5-317. These orders by an administrative judge are reviewable by the commissioner.

Tenn. Comp. R. & Regs. 1340-02-02-.17(1)(f). This procedure uses substantially the same language as Tennessee Rule of Civil Procedure 55, which allows trial courts to set aside default judgments "[f]or good cause shown . . . in accordance with Rule 60.02." Tenn. R. Civ. P. 55.02. As the ALJ noted, the Tennessee Rules of Civil Procedure allow default judgments to be set aside at the discretion of the court upon a showing of mistake, inadvertence, or excusable neglect. *See* Tenn. R. Civ. P. 60.02. The ALJ and the Designee correctly identified that these Rules build the legal scaffolding that should be used to assess Mr. Patterson's request to set aside the entry of default.

Moreover, the reviewing officials correctly identified the key analytical factors that shape the inquiry. The ALJ cited a decision by the United States Court of Appeals for the Sixth Circuit, *United Coin Meter Co. v. Seaboard Coastal Line Railroad*, 705 F.2d 839 (6th Cir. 1983), to support examining "whether the non-defaulted party will be prejudiced" by setting aside the default, "whether the Defaulted party had a meritorious defense," and "whether culpable conduct of the default party led to the default." *See* 705 F.2d at 845. The Tennessee Supreme Court endorsed corresponding factors in *Henry v. Goins*, a case that Mr. Patterson relies upon. *See* 104 S.W.3d at 481. It is not clear why Mr. Patterson suggests that the ALJ and the Designee departed from the standard.

As the ALJ and the Designee noted, Rule 55 aligns its criteria justifying the setting aside of a default with Rule 60. *See* Tenn. R. Civ. P. 55.02. Rule 55 treats those criteria, *i.e.*, mistake, inadvertence, or excusable neglect, as potential "good cause[s]" to set aside a default, which is the same language used in the Uniform Administrative Procedures Act and Tenn. Comp. R. & Regs. 1340-02-02-.17(1)(f). *See* Tenn. Code Ann. § 4-5-317(a). Insofar as Mr. Patterson's main complaint is that the ALJ and the Designee did not spend a significant amount of their time discussing *Henry v. Goins*, we fail to see how not doing so corrupts their analyses given that they used a corresponding analytical framework for addressing the appropriateness of setting aside an entry of default. *See Henry*, 104 S.W.3d at 481-82 (indicating that in determining whether to set aside a default courts should consider" (1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) whether the non-defaulting party would be prejudiced if relief were granted" and that the burden rests with the party seeking to aside the default).[12]

Moving to the second step of the *McEwen* framework, we now consider whether, under the preponderance standard, the facts were in accord with the ALJ and Designee's decisions assessing the appropriateness of setting aside the default. *See* 173 S.W.3d at 820. In addition to the facts relied upon to enter the original order for default, the ALJ and Designee both benefitted from two affidavits: one signed by Mr. Moncier and another signed by Mr. Moncier's secretary. These two affidavits recount the circumstances of receiving the hearing notice, misplacing it, and, consequently, failing to document the details of the hearing on Mr. Moncier's calendar. This is exactly the type of evidence courts typically consider when addressing motions to set aside final judgments under Rule 60 and motions to set aside default judgments under Rule 55. *See, e.g., Jerkins v. McKinney*, 533 S.W.2d 275, 280-281 (Tenn. 1976); *Tate v. Monroe County*, 578 S.W.2d 642, 643-44 (Tenn. Ct. App. 1978); *Christy v. Christy*, No. M2021-00192-COA-R3-CV, 2022 WL 951254, at *6-7 (Tenn. Ct. App. Mar. 30, 2022) (relying on affidavits to assess whether counsel received notice of a hearing). The ALJ and the Designee were tasked with deciding whether the reasons for Mr. Patterson's non-attendance constituted "good cause" to set aside the default, and these two affidavits supply the factual predicate for making that determination. *See* Tenn. R. Civ. P. 55.02. The facts are in accord with the ALJ's and Designee's decision under the preponderance standard.

Finally, the last step of the *McEwen* framework asks us to assess whether the ALJ and the Designee appropriately applied the facts before them to the rules regarding whether

---

[12] The Tennessee Supreme Court has indicated that "[i]f the court finds that the defaulting party has acted willfully, the judgment cannot be set aside on 'excusable neglect' grounds, and the court need not consider the other factors. If the conduct was not willful, however, then the court must consider whether the defaulting party has a meritorious defense and whether the non-defaulting party would be prejudiced by the granting of relief." *Discover Bank v. Morgan*, 363 S.W.3d 479, 494 (Tenn. 2012); see also *Brown v. HDR Logistics*, *LLC*, No. E2024-00144-COA-R3-CV, 2024 WL 4799723, at *7 (Tenn. Ct. App. Nov. 15, 2024) (noting "the threshold nature of willfulness").

to set aside the original entry of default. *See* 173 S.W.3d at 820. Both the ALJ and the Designee concluded that "the Department will be prejudiced; [Mr. Patterson] has not stated a meritorious defense; and the culpable conduct of [Mr. Patterson] led to the default."

Concerning the threshold willfulness factor, we note that Mr. Patterson's proposed excuse for not attending the November 2016 hearing differs from the actual reason for not attending the hearing. Mr. Patterson maintains, even now, that he did not have notice of the hearing. The record establishes that allegation is unfounded. Based on the information submitted by the Department, the ALJ properly found that Mr. Moncier and his office received notice of the hearing in October 2016. However, the underlying reason for Mr. Patterson's non-attendance is not a lack of notice but his attorney's failure to properly document the details of the hearing upon receipt of the Department's notice. Miscalendaring could still be potential basis for "inadvertence" or "excusable neglect." *Discover Bank*, 363 S.W.3d at 493 (noting that "missed court dates *may* constitute excusable neglect when due to an attorney's carelessness or inattention") (emphasis added); *see also., Ferguson v. Brown*, 291 S.W.3d 381, 390 (Tenn. Ct. App. 2008), *perm. app. denied* (Tenn. Apr. 27, 2009) (setting aside entry of summary judgment because his attorney failed to calendar the correct response date).

The ALJ and Designee concluded that counsel's conduct was, however, actually culpable. Mr. Patterson's argument at best pushes upon the willfulness factor. Even if we were assume that Mr. Patterson is correct with regard to willfulness factor, the ALJ and Designee, nevertheless, proceeded in this case to consider the lack of meritorious defense and prejudice factors, concluding that both supported declining to set aside the default in the present case.

Concerning the meritorious defense factor, we note that Mr. Patterson did not raise any argument about the underlying merits of the Ranger seizure in his request seeking to have the default set aside. *See Henry*,104 S.W.3d at 482 ("[I]t is clear that the Henrys had a meritorious claim. When their claims were instated, the Henrys obtained a judgment in their favor."); *see also Tenn. Dept. of Human Servs. v. Barbee*, 689 S.W.2d 863, 868 (Tenn. 1985) (noting that both the defendant's answer and an "affidavit filed with the Court in conjunction with the motion to set aside" established existence of meritorious defense). Given this lack of argumentation, we cannot disagree with the conclusion that Mr. Patterson did not show the existence of a meritorious defense.

As to the prejudice factor, the ALJ and the Designee made findings that the Department would be prejudiced in continuing this case monetarily in several respects, including by way of continuing to maintain the Ranger in its custody. This determination was made in the context of proceedings in which Mr. Patterson's approach had already produced significant delay. Given the nature of the ALJ's and Designee's determination, we see no basis for disturbing that conclusion on appeal.

From our review of the record and consideration of the parties' briefing, a reasonable person could have reached the conclusion reached by the ALJ and Designee in declining to set aside the default. The ALJ's and the Designee's decisions to decline to set aside the default were "within the range of acceptable alternative dispositions" of Mr. Patterson's case. *See Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008); *Miller*, 271 S.W.3d at 665; *McEwen*, 173 S.W.3d at 820; *see also In re Estate of Merritt*, No. 01-A-01-9112-CV00472, 1992 WL 245526, at *2-3 (Tenn. Ct. App. Sept. 30, 1992) (affirming despite averments that an attorney "did not put [the notice] on his calendar nor [did he] notify his client of the hearing"). Thus, the Chancery Court properly affirmed those decisions.

## IV.

Our decision to affirm the Chancery Court's order resolves Mr. Patterson's remaining issues. To the extent Mr. Patterson raises issues on appeal regarding the merits of the Ranger seizure, those issues are pretermitted by the entry of default against him. Regarding the County's position that it was improperly joined in this action, that issue is also pretermitted because Mr. Patterson's default, which disposes of the suit, has been affirmed. By extension, Mr. Patterson's request for attorney's fees from the County is denied, as Mr. Patterson is not a "prevailing party" within the meaning of the federal statutes he cites. *See* 42 U.S.C. §§ 1983, 1988(b).

## V.

In considering the arguments advanced on appeal and for the reasons discussed above, we affirm the judgment of the chancery court. The costs of the appeal are taxed to the appellant, Thomas Patterson, for which execution may issue if necessary. The case is remanded for such further proceedings as may be necessary and consistent with this opinion.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE

- 28 -